OPINION
{¶ 1} Defendant-appellant, Gerald L. Morales, appeals from judgments of the Franklin County Court of Common Pleas finding him guilty of two counts each of aggravated burglary, kidnapping, and rape, all with specifications.
 {¶ 2} Defendant's appeals arise out of two separate incidents with two different victims: (1) case No. 02CR-01-71 (Franklin App. No. 03AP-318), whose victim was F.D., was initiated with an indictment filed January 1, 2002, and (2) case No. 02CR-01-385 (Franklin App. No. 03AP-319), whose victim was L.A., was initiated with an indictment filed January 28, 2002. Each indictment charged defendant with (1) one count of aggravated burglary in violation of R.C. 2911.11 with a repeat violent offender specification, (2) one count of kidnapping in violation of R.C. 2905.01 with a repeat violent offender specification, a sexual motivation specification, and a sexually violent predator specification, and (3) one count of rape in violation of R.C.2907.02, with a repeat violent offender specification. In each of the two cases, the state filed a motion for joinder. Defendant filed no response, and a July 8, 2002 entry in the record indicates the state and defendant agreed to consolidate the cases for trial.
 {¶ 3} Prior to trial, defendant waived a jury trial on all of the specifications. The state presented its case. Although defendant cross-examined the state's witnesses, defendant presented no witnesses. The jury's deliberations resulted in a guilty verdict on all counts. The trial court found defendant guilty of all specifications and sentenced defendant accordingly. Defendant appeals, assigning the following errors:
First Assignment of Error:
The trial court committed plain error in joining Cases #02CR71 and #02CR385, in violation of Criminal Rule 14.
Second Assignment of Error:
The trial court erred in failing to grant Appellant's Motions for a mental health evaluation to determine competence to stand trial and to proceed pro se.
Third Assignment of Error:
Appellant was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution, when counsel's performance prior to and during the trial was clearly deficient.
Fourth Assignment of Error:
The trial court erred in permitting the guilty verdict, which was tainted by prosecutorial misconduct occurring when the State continued to encourage the jury to combine the evidence from both cases and find Appellant guilty of both cases based on the cumulative evidence.
Fifth Assignment of Error:
The trial court committed error in sentencing the Appellant to maximum consecutive sentences.
 {¶ 4} According to the state's evidence, F.D. retired for the evening at 9:00 p.m. on Friday, December 1, 2000. She woke up "with somebody's hands on my mouth." (Tr. Vol. I, 96.) When she attempted to see who it was, the unidentified male stated, "[i]f you look at me, I'll kill you." (Tr. Vol. I, 96.) He then stated, "I just need to masturbate." (Tr. Vol. I, 96.) Thinking to herself that "[t]his is not the way I want to die[,]" F.D. closed her eyes when the man told her to do so. He asked her a series of questions, including how long it had been since she had engaged in sexual relations. He kissed her breasts and attempted to kiss her. He penetrated her, and asked "[d]oes it feel good?" (Tr. Vol. I, 96.) While F.D. knows the man penetrated her, she does not know with what: "[a]ll I know is I was soaked when he left." (Tr. Vol. I, 98.) At the time of the assault, defendant lived about two blocks from the victim's home.
 {¶ 5} After the man left, F.D. went downstairs and told her daughter she had been raped. She was transported to Grant Hospital where an examination for sexual assault was conducted. As a result of the evidence gathered from the examination, semen slides were subjected to DNA testing.
 {¶ 6} On September 8, 2001, 13-year-old L.A. was watching television and stayed up a bit late. At the time she went to bed, her stepfather was at work. Around 2:00 a.m. on September 9, 2001, she woke up to find someone in her room. She "thought maybe my stepdad was there and it was morning; and I heard someone say, `I'm not here to rape you.'" (Tr. Vol. II, 46.) A male was sitting at the edge of her bed near her knees. L.A. rolled over on her back, "because I didn't know what to do. I rolled over on my back and the person climbed over top of me, pulled my underpants down and made me spread my knees and raped me." (Tr. Vol. II, 46.) During that time, the person asked L.A. how old she was, and as she cried he said, "`[b]e quiet; I don't want to have to hurt you.'" (Tr. Vol. II, 46.) He then stopped and stated: "`I said I wasn't going to rape you. I'm sorry.' And then he left." (Tr. Vol. II, 46.) The room was dark enough that L.A. was unable to identify the perpetrator. Defendant at the time lived a "very few minutes" walking distance from the victim's home. (Tr. Vol. II, 95.)
 {¶ 7} L.A. underwent a sexual assault examination at Children's Hospital later that morning. Semen was collected from her vaginal cavity and examined under slides for DNA evidence.
 {¶ 8} According to forensic scientist Bobbie-Jo Kennedy, who examined the rape kit slides from both victims, the sperm fraction of the vaginal swabs from both L.A. and F.D. match defendant. According to Kennedy, the "expected frequency of occurrence from the DNA profile identified in the sperm fraction of the vaginal swab[s] are as follows: Within the Caucasian population it's 1 in 90 quadrillion, 580 trillion people. Within the African-American population, 1 in 2 quintillion 64 quadrillion. And Hispanic, 1 in 84 quadrillion, 600 trillion people." (Tr. Vo; II, 154-155.)
 {¶ 9} We first address defendant's second assignment of error, which contends the trial court erred in failing to grant defendant's request for a mental health evaluation to determine his competence to stand trial. On the morning defendant's jury trial was to begin, the trial court, at defendant's request, allowed defendant to address the court concerning a couple of matters. Initially, defendant advised he was not satisfied with his legal representation and was requesting new counsel. The trial court explained that defendant could retain anyone he wanted, but counsel had been appointed, the case was old, and the court had expended "a great deal of money in terms of attorney's fees, DNA testing and lab results and so forth, on behalf of your defense, through [counsel]." (Supp. Tr. 3.) Following a colloquy between defendant and the court, defendant stated "I have asked [counsel] if I could have an evaluation, and when it was said that the only thing he feels would help me is old age, I mean, I lost all hope, all confidence." (Supp. Tr. 12.)
 {¶ 10} Counsel advised that he did not recall defendant's ever asking for a mental health evaluation, and the court observed that such a request had not come to its attention. The trial court added that insanity had never been an issue in the case, so only an evaluation to determine whether defendant was "incompetent for purposes of going forward" could be offered. (Supp. Tr. 13.) The court noted defendant certainly understood the nature of the charges and had demonstrated an ability to assist in his own defense, "even to the point where you're disagreeing with your lawyer in terms of strategy." (Supp. Tr. 13.) The court further pointed out that defendant's "record justifies that he certainly is no stranger to this process, and that has never been raised as an issue in the past, at least not to my knowledge." (Supp. Tr. 17.) Defense counsel stated he "never had reason to believe that [defendant] was incompetent or insane. He always has had a good grasp of the facts of the situation, asked questions appropriately, factual issues that I was discussing with him. And I have no reason to believe that he would require an evaluation for mental health or any other reason." (Supp. Tr. 17.)
 {¶ 11} Ultimately, the court advised defendant it did not "find that you're being genuine. I think it's another delay tactic and it's designed to delay the trial." (Supp. Tr. 18.) Noting that defendant was able "to communicate with his lawyer, he is able to argue with his lawyer, he's able to certainly negotiate what he considers to be a more favorable sentence than what the State is offering, and pretty much disapproving of [defense counsel] because [defense counsel] can't make it happen for what he wants to have happen," the court determined no evaluation needed to be conducted. (Supp. Tr. 21-22.) Further determining defense counsel had not taken or failed to take any action to warrant the extraordinary measure of removing him from the case, the court allowed defendant an opportunity to confer with counsel about the offer the state proposed.
 {¶ 12} Because defendant raised the issue of an evaluation prior to trial, defendant's second assignment of error contends an evaluation was required, and the trial court erred in not ordering one. As the Supreme Court explained in State v. Bock
(1986), 28 Ohio St.3d 108, "there is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory. The issue before the court today, however, is whether the failure to provide a hearing in this instance was reversible error." Id. at 109. Citing to the United States Supreme Court's opinion in Patev. Robinson (1966), 383 U.S. 375, 86 S.Ct. 836, Bock observed that "[t]he crux of Robinson * * * is not that a defendant is automatically entitled to a hearing on the competency issue once that issue is raised. Rather, Robinson stands for the proposition that the right to a hearing on the issue of incompetency rises to constitutional proportions only when the record contains sufficient indicia of incompetency * * * such that a formal inquiry into the defendant's competency is necessary to protect his right to a fair trial." Id. at 110. (Citations omitted.) As a result, Bock concluded, "it is clear that the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." Id.
 {¶ 13} In describing incompetency, Bock referred to R.C.2945.37, which defines incompetency as a defendant's inability to understand "the nature and objective of the proceedings against him or of presently assisting in his defense." According toBock, "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." Id. at 110.
 {¶ 14} Here, as the trial court properly observed, defendant exhibited no indicia of incompetency. He was articulate, capable of communicating and even arguing with his lawyer, and able to negotiate toward a favorable sentence, to express his concerns, to understand the nature of the proceedings, and to assist in his own defense to the point that he "has expressed his dissatisfaction in terms of his lawyer." (Supp. Tr. 25.) Were there any doubt about the trial court's perceptions and the sufficiency of the record, defense counsel candidly stated he had no reason to doubt defendant's competency. Accordingly, the record does not demonstrate error in the trial court's refusal to grant a competency evaluation. Rather, the trial court may have accurately assessed that defendant's request for a competency evaluation was an alternative to the trial court's refusal to grant him a continuance for the purpose of obtaining a different attorney.
 {¶ 15} Defendant nonetheless contends that defense counsel's statement during sentencing revealed the need for a competency evaluation, as defense counsel admitted defendant "was involved in a serious automobile accident when he was a boy, suffered brain damage, was in a coma for a week." (Sentencing Hearing Tr. 38-39.) As the court noted in Bock, however, we cannot say such factors indicate incompetence. To the contrary, defendant's own performance in the pretrial hearing, confirmed by defense counsel's own assessment, indicates any trauma defendant sustained in the automobile accident did not affect defendant's competency to stand trial. Accordingly, this record lacks sufficient indicia of incompetency to render the trial court's failure to conduct a mental evaluation anything but harmless error under the standard set forth in Bock. Defendant's second assignment of error is overruled.
 {¶ 16} Defendant's first and third assignments of error are interrelated, and we address them jointly. His first assignment of error asserts the trial court committed plain error in joining the two cases for trial, and his third assignment of error asserts defense counsel was ineffective in, among other things, failing to object to the prosecution's motion for joinder.
 {¶ 17} Pursuant to Crim.R. 8(A), joinder of multiple offenses is permitted when the charged offenses are "of the same or similar character * * * or are part of a course of criminal conduct." Joinder of offenses is favored, as a general rule, to prevent successive trials, to conserve judicial resources, and to diminish inconvenience to the witnesses. State v. Torres
(1981), 66 Ohio St.2d 340, 343. However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses * * * the court shall order an election or separate trial of counts * * *." Crim.R. 14. "Weighing the danger of confusion and undue cumulative inference is a matter for the trial judge within [the judge's] sound discretion. [The judge's] denial of severance is not grounds for reversal unless clear prejudice and abuse of discretion is shown." Johnson v. United States (C.A. 8, 1966),356 F.2d 680, 682, certiorari denied, 385 U.S. 857, 87 S.Ct. 105.
 {¶ 18} Although defendant did not object to the state's motion for joinder, and thus did not note any prejudice accruing from a joint trial of the two indictments, for purposes of defendant's assignment of error we assume prejudice in the joinder of the cases for trial. Even if prejudice results, however, that showing does not necessarily preclude joinder. Rather, we "must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct." State v. Schaim (1992), 65 Ohio St.3d 51, 59. Because defendant failed to object to the joinder of offenses for trial, we also analyze his assignment of error under a plain error standard.
 {¶ 19} Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial: (1) "there must be an error, i.e., a deviation from a legal rule," (2) "the error must be plain," that is, an error that constitutes "an `obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights" such that "the trialcourt's error must have affected the outcome of the trial." (Emphasis added.) State v. Barnes (2002), 94 Ohio St.3d 21, 27;State v. Gross, 97 Ohio St.3d 121, 2002-Ohio-5524, ¶ 45. The decision to correct a plain error is discretionary and should be made "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." Barnes,
supra, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 20} Here, the record fails to disclose plain error. Whether the evidence from one case would have been admissible even in a separate trial of the other case is debatable. The evidence reveals a consistency, arguably probative of identity, in the perpetrator's approach to the two incidents. In each instance, he lived in close proximity to the victims' homes, he entered and left through a back door, he spoke to, inquired of, and threatened his victims, he raped both victims, and then he left. See State v. Lowe (1994), 69 Ohio St.3d 527, 531, quotingState v. Jamison (1990), 49 Ohio St.3d 182, syllabus (concluding that "[o]ther acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404[B]"); State v. Williams, Franklin App. No. 03AP-287, 2003-Ohio-6663, at ¶ 18 (noting Evid.R. 404[B] provides that evidence of other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").
 {¶ 21} However, even if the evidence from the one incident is not admissible in the trial of the other, the evidence for each incident is simple and distinct. Some cases are unsuitable for joinder because the evidence pertaining to each case is difficult to segregate. Here, however, each case was a completely separate act. The mere fact that the crimes arising out of each incident were the same does not violate the simple and distinct test, since the crimes must be of the same or similar character to qualify for joinder. The evidence was not interlocking because each involved different victims, slightly different factual scenarios and different witnesses.
 {¶ 22} Assisting in further separating the two cases, one assistant prosecutor conducted examination of the non-scientific witnesses involved in the F.D. case, and the other handled the examination of such witnesses for the L.A. case. Moreover, during the final instructions to the jury, the court advised the jury to regard each count separately and distinctly and to consider the evidence as to each count separately. A jury is presumed to follow the trial court's instructions. State v. Jones (2000),90 Ohio St.3d 403, 414. While the trial court's instructions may have been more helpful had they advised the jury to consider the evidence in each case separately, the given instructions at least reduced the danger of the jury confusing or improperly cumulating the evidence. See State v. Dickens (Apr. 12, 1983), Franklin App. No. 81AP-1003; Drew v. United States (D.C. Cir. 1964),331 F.2d 85, 89. Reinforcing its instruction, the trial court gave the jury separate verdict forms for each count.
 {¶ 23} As a result of the foregoing, defendant has not demonstrated plain error in the trial court's joining the two cases for trial. The evidence presented at trial easily and reasonably could be separated between the offenses regarding F.D. and those concerning L.A., and we cannot conclude that the outcome of the trial would have been different but for the joinder of the cases.
 {¶ 24} Defendant also contends his attorney was ineffective in failing to object to the prosecution's motion for joinder. To demonstrate ineffective assistance of counsel, defendant first must show that counsel's performance was deficient, which requires showing that counsel made errors so serious counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment. Strickland v. Washington (1984), 466 U.S. 668,686, 104 S.Ct. 2052. Second, defendant must demonstrate that the deficient performance prejudiced the defense, which requires showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. Id. Unless defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id.
 {¶ 25} Defendant's contentions that counsel was ineffective in failing to object to the joinder of cases are unpersuasive. Defense counsel was placed in a tenuous position in attempting to defend the indicted offenses against defendant. The evidence left little to no doubt that the victims had been raped, even though the darkness precluded the victims' being able to identify the perpetrator. Accordingly, the trial resolved to identification of the person who illegally entered into the homes of each victim and then kidnapped and raped the victims. While the inability of each victim to identify the perpetrator was of some assistance to defendant, the DNA evidence, obtained as a result of the sexual assault examinations that occurred immediately after each crime, considerably reduced defense counsel's ability to urge defendant's innocence. Indeed, although the record indicates the trial court provided defense counsel with funds to obtain defendant's own DNA expert, defense counsel's failure to submit evidence countering the state's DNA evidence suggests the evidence was not favorable to defendant.
 {¶ 26} In the end, defense counsel was left in the unenviable position of attempting to refute the state's DNA evidence, which offered little opportunity to persuade the jury that defendant was misidentified. Indeed, the jury deliberated for less than one-half hour in reaching its verdict. Consequently, even if the two cases had been tried separately, the nature of the DNA evidence was such that the verdicts in all probability would have been as they were in the joint trial of these cases, and defendant thus suffered no prejudice as a result of defense counsel's failure to object to joinder or to seek severance of the two cases.
 {¶ 27} Defendant's third assignment of error also asserts counsel was ineffective in failing to request a mental health evaluation, as discussed under defendant's second assignment of error.
 {¶ 28} As the Supreme Court noted in State v. Williams,99 Ohio St.3d 439, 2003-Ohio-4164, at ¶ 65, counsel knows his or her client and best determines whether defendant is able to assist in the defendant's defense. Counsel's decision not to pursue an evaluation here appears to reflect a reasonable professional judgment, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 452, quoting Strickland, at 689. In the final analysis, because defendant did not display sufficient indicia of incompetence to warrant a competency hearing, his counsel's failure to request that the trial court order such a hearing does not rise to the level of deficient performance. State v. Thomas, 97 Ohio St.3d 309,2002-Ohio-6624, at ¶ 41.
 {¶ 29} Defendant's third assignment of error further asserts defense counsel failed to competently prepare for trial, to obtain all documents necessary to defendant's defense, and to develop exculpatory evidence. Even if defendant were able to demonstrate that counsel's performance was deficient in any of those areas, determination of counsel's alleged ineffective assistance requires evidence outside the record in order to assess whether counsel's inaction prejudiced defendant. Because our review is confined to the record, those issues are more appropriately addressed in post-conviction relief. Similarly, to the extent defendant contends defense counsel's performance was deficient because he withheld information concerning the brain injury defendant sustained, this record fails to disclose the nature of that information, and we thus again are unable to ascertain on this record whether counsel's inaction prejudiced defendant.
 {¶ 30} Lastly, defendant's third assignment of error contends counsel was deficient in failing to participate or represent him during the specification hearing and sentencing hearing in this matter. Defendant, however, fails to specify what he believes counsel could have done concerning the specifications, given that the testimony regarding the specifications was largely a recitation of the facts underlying his prior convictions. Similarly, while counsel did not offer much in the way of mitigation, the record fails to disclose what additional information counsel could have placed before the court for sentencing.
 {¶ 31} For the foregoing reasons, defendant's first and third assignments of error are overruled.
 {¶ 32} Defendant's fourth assignment of error is related to his first assigned error and asserts the jury's verdict was tainted by prosecutorial misconduct, in that the assistant prosecutor argued the facts from both cases in her closing argument to the jury.
 {¶ 33} The test for prosecutorial misconduct is whether the prosecution's conduct was improper and, if so, whether the conduct prejudicially affected substantial rights of the accused.State v. Finkes (Mar. 28, 2002), Franklin App. No. 01AP-310, citing State v. Lott (1990), 51 Ohio St.3d 160, 165. "`[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 947. As such, misconduct is not grounds for reversal unless the defendant has been denied a fair trial. State v. Maurer (1984), 15 Ohio St.3d 239, 266, certiorari denied (1985), 472 U.S. 1012, 105 S.Ct. 2714." Statev. Hairston (Sept. 28, 2001), Franklin App. No. 01AP-252, appeal not allowed (2002), 94 Ohio St.3d 1433.
 {¶ 34} The prosecution's argument exceeded the bounds of proper argument in defendant's trial and was error. One of the dangers of joinder of cases is the opportunity for the jury to use the evidence from one case to corroborate the other. Statev. Wiles (1991), 59 Ohio St.3d 71, 77. Although the jury was instructed to consider each count separately, the prosecution's argument urged the jury to combine the evidence from the two cases in determining defendant's guilt under each:
Ladies and gentlemen: We are not asking you to rely simply on the DNA evidence. * * *
* * *
* * * What are the odds that he would be unjustly accused in the [F.D.] case, that the machine would screw up with that sample and match it to him? But whatever the odds, it would screw up twice in the [L.A.]? And then you add into that astronomical figure what are the odds that the machine would screw up in the [F.D.] case and he would live around the corner? * * *
* * * How similar are these two crimes? * * *
(Tr. Vol. II, 223-225.)
 {¶ 35} The issue then resolves to whether defendant was denied a fair trial. The only issue in the case was the identification of the perpetrator. Here, the DNA evidence was so overwhelming in each case that we are compelled to conclude the prosecution's argument did not affect the verdicts the jury otherwise would have rendered. Accordingly, while we agree with defendant that the closing argument of the prosecution amounts to prosecutorial misconduct, we are unable to find prejudice on this evidence. Defendant's fourth assignment of error is overruled.
 {¶ 36} Defendant's fifth assignment of error asserts the trial court failed to make the necessary findings and state its reasons for imposing maximum and consecutive sentences on defendant.
 {¶ 37} Pursuant to former R.C. 2929.14(C), a trial court imposing the maximum sentence must be able to make specified findings. Pursuant to former R.C. 2929.19(B)(2)(d), the trial court also must state its reasons for its finding in support of a maximum term. Similarly, pursuant to former R.C. 2929.14(E) and2929.19(B)(2)(c), a trial court could impose consecutive sentences under selected circumstances, but was required to make certain statutorily required findings and state its reasons for those findings.
 {¶ 38} Here, although the trial court arguably set forth reasons which would support the required findings under the noted statutes, the trial court failed to make the actual findings at the sentencing hearing. Instead, the court included the findings in its judgment entry. As the Supreme Court stated in State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, however, the trial court is required to make the necessary findings at the sentencing hearing; including them in the court's judgment entry is not sufficient. Accordingly, defendant's fifth assignment of error is sustained.
 {¶ 39} Having overruled defendant's first, second, third and fourth assignments of error, but having sustained defendant's fifth assignment of error, we affirm defendant's convictions but reverse his sentence and remand only for re-sentencing.
Judgments affirmed as to convictions; cases remanded forre-sentencing only.
 Lazarus, P.J., and Bowman, J., concur.