OPINION
{¶ 1} Defendant-appellant, Vincent J. Williams, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of two counts of aggravated burglary, two counts of kidnapping, four counts of rape, one with a specification, and one count of gross sexual imposition. Because the trial court did not err in its evidentiary rulings, and because the manifest weight of the evidence supports the trial court's judgment, we affirm.
 {¶ 2} By a 15-count indictment filed July 12, 2002, defendant was charged with three counts of aggravated burglary in violation of R.C.2911.11, three counts of kidnapping in violation of R.C. 2905.01, four counts of rape in violation of R.C. 2907.02, two with specifications, two counts of gross sexual imposition, and three counts of attempted rape in violation of R.C. 2923.02 as it relates to R.C. 2907.02. The charges arose out of incidents involving three separate victims.
 {¶ 3} Just prior to the commencement of trial, the prosecution requested that Counts I through IV of the indictment be nolled, because the state was unable to obtain the presence of the victim involved in those four counts. A jury trial resulted in guilty verdicts on the remaining 11 counts of the indictment, but the trial court dismissed the two attempted rape counts and one specification pursuant to Crim.R. 29. By judgment entry filed March 11, 2003, the trial court sentenced defendant on the remaining nine counts of the indictment to a total of 60 years. Defendant appeals, assigning the following errors:
Assignment of error No. 1:
A trial court abuses its discretion when it overrules a motion in limine and allows evidence of a defendant's prior criminal record to be presented to the jury, where the defendant invokes his right to remain silent.
Assignment of error No. 2:
A trial court abuses its discretion when it allows into evidence a rape kit without laying the proper foundation.
Assignment of error No. 3:
A criminal defendant does not receive a fair trial where a prosecutor gives his personal opinion of the accused'[s] guilt and tells the jury "we know that he did it."
Assignment of error No. 4:
The conviction of appellant is against the manifest weight of the evidence.
I. The State's Evidence
A. Bianca Sanders
 {¶ 4} According to the state's evidence, on June 25, 2002, Bianca Sanders was asleep on the sofa in her apartment, when she woke up to see a man standing over her with a knife. The man, later identified as defendant, wore a nylon stocking over his head and said, "Bitch, move and I'll kill you." (Tr. 35.) Defendant "pulled his pants over to the side and pulled out his penis." Id. Frightened and believing defendant would hurt her, Sanders thought she was about to be raped and asked defendant to use a condom. With his arm around her neck and the other hand holding a knife to Sanders' throat, defendant went with Sanders to get the condom. Wearing the condom, defendant attempted to "put his penis in [her] mouth." (Tr. 36.) Sanders resisted at first, but relented. After he put his penis in her mouth, he achieved an erection and vaginally raped Sanders.
 {¶ 5} Defendant then got up, returned the knife to Sanders' kitchen, and threw the condom in the trash. He took off the nylon stocking from his head and asked Sanders if she knew him. Explaining, he told her his name was Popcorn, he grew up on the Hilltop, and he had just gotten out of prison after serving a nine to 19-year sentence. He further told her he had been watching her for two days.
 {¶ 6} Defendant then put on another condom and again raped Sanders. Following that rape, he walked through the apartment with Sanders, showing her how he had obtained entrance. Defendant advised her to keep her windows locked, he locked all the windows, and he left. Defendant came back and knocked on the door, but Sanders could see him through the "peep" hole and refused him entrance.
 {¶ 7} Sanders did not call the police after defendant left; instead, she called her boyfriend because she "was scared and he was the closest one to me." (Tr. 40.) Unable to reach him, she waited until daylight and then went to his house. When she explained what had happened to her, the two of them began to look for defendant but were unable to find him. A friend of her boyfriend suggested Sanders go to the hospital, and she accompanied Sanders there. Before going to the hospital, however, Sanders returned to her apartment and retrieved the condoms from the trash, as well as a glass defendant had touched.
 {¶ 8} Sanders identified defendant through a photo array the police presented to her. She also testified to a tattoo on defendant's chest bearing the letters V-A-N-I-T-I-A, as well as a tattoo on his arm depicting a heart with thorns going through it.
B. Shannon Haley
 {¶ 9} In the early morning hours of June 28, 2002, Shannon Haley had dozed off in her recliner while watching a movie. She woke to a stranger "in [her] face with a knife to [her] throat." (Tr. 134.) The stranger, later identified as defendant, said "don't move or I'm going to cut your fucking throat." (Tr. 138.) Pulling his penis out without removing his pants, defendant put his penis in her mouth and forced Haley to perform oral sex on him. He then wanted to have "sex" with her, but she explained she had undergone major surgery and having sexual relations would "rupture and kill her." (Tr. 140.) In response, defendant pulled her out of the recliner and over to the sofa. Defendant had her sit on his lap, while he masturbated himself and ultimately ejaculated.
 {¶ 10} Defendant then made Haley walk ahead of him to the bathroom. At that point, he was not wearing a shirt. Haley was able to see tattoos on defendant. The one spelled out letters she did not recognize; the other was a "heart-shaped tattoo to me seemed with nothing in it and just like a scrolly type something around the outside of it." (Tr. 144.) Telling her he would slit her son's throat if she tried to escape, defendant instructed Haley to sit on the toilet while he showered. After he showered, he was hungry and followed her to the kitchen. He ate and then left. She called 9-1-1, and the police arrived shortly thereafter.
 {¶ 11} Haley also was shown a photo array and picked defendant's photograph as the perpetrator. Police collected a towel, cigarette butts, a cup defendant used, some items related to the food he ate, and toilet paper from the toilet.
C. Identification Testing
 {¶ 12} The items retrieved from the two victims' apartments were processed for fingerprints and deoxyribonucleic acid (DNA). The DNA analysis of the condoms revealed that the outside of the condoms matched Bianca Sanders' DNA, and the inside of the condoms matched defendant's DNA. The approximate frequency of this particular DNA in the African-American database is one in 38 quintillion.
 {¶ 13} The cup from Shannon Haley's apartment produced fingerprints that matched those of defendant. While the bath towel from Shannon Haley's apartment produced no stains, and the toilet paper from her apartment could not be analyzed, the cigarette butts were tested. Five of the cigarette butts matched Shannon Haley's DNA; one matched defendant's DNA. Based on the number of matching loci, the state's witness testified that the frequency with which defendant's DNA occurs in the African-American population is 1 in 15 trillion, 740 billion.
 {¶ 14} Defendant presented no witnesses.
II. Defendant's Assignments of Error
 {¶ 15} In his first assignment of error, defendant contends the trial court erred in allowing evidence of the defendant's prior record, where defendant invoked his right to remain silent by not testifying at trial.
 {¶ 16} Prior to trial, defendant filed a motion in limine to exclude from the record any evidence that Bianca Sanders' rapist told her his name is Popcorn, he grew up on the Hilltop, and he just had been released after serving time in prison. The court overruled the motion in limine. When Bianca Sanders testified to defendant's statements to her, the trial court overruled defendant's objection.
 {¶ 17} Initially, defendant's statement to Sanders is admissible pursuant to Evid.R. 801(D)(2)(a), and defendant does not appear to contend otherwise. Rather, defendant's objection is under Evid.R. 404(B) and the related statute, R.C. 2945.59.
 {¶ 18} Evid.R. 404(B) provides that evidence of other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See, also, R.C.2945.59. The rule generally prohibits using character evidence to prove a defendant in the matter at issue acted in conformity with his character.State v. Mason (1998), 82 Ohio St.3d 144, 160. Nonetheless, pursuant to Evid.R. 404(B), "evidence of other acts, crimes, or wrongs is admissible to prove identity." State v. McNeill (1998), 83 Ohio St.3d 438, 442, citing State v. Allen (1995), 73 Ohio St.3d 626, 632, and State v. Davis
(1991), 62 Ohio St.3d 326, 338.
 {¶ 19} Here, Sanders testified her rapist explained to her that he grew up on the Hilltop, was known as Popcorn, and had just been released from prison after serving a period of nine to 19 years. Detective Eric Wooten, of the Columbus Division of Police, Sexual Abuse Squad, testified that police investigation revealed defendant was known as Popcorn, grew up on the Hilltop, and had just been released from prison after serving nine years. Because defendant's admissions, including his admission that he had just been released from prison, furthered the state's identifying him as the perpetrator of the charged crimes, the trial court did not abuse its discretion in permitting Sanders to testify to defendant's admissions. McNeill, supra (finding evidence of other acts relevant to corroborate identification of the defendant as the shooter); State v.Maurer (1984), 15 Ohio St.3d 239, 265 (determining that because of the broad discretion trial courts have to admit relevant evidence, a reviewing court "should be slow to interfere").
 {¶ 20} Defendant also appears to contend that Sanders' testimony somehow impinged on his right to remain silent at trial. While a defendant's right to refrain from testifying is well-established, we are aware of no authority, and defendant points to none, that suggests a defendant's invoking his or her right to remain silent prevents a party from offering into evidence, under the circumstances of this case, defendant's own statements to the victim. Because the testimony was admissible as non-hearsay under Evid.R. 801(D)(2)(a) and further was admissible for purposes of identity under Evid.R. 404(B), we overrule defendant's first assignment of error.
 {¶ 21} Defendant's second assignment of error contends the trial court improperly allowed evidence and testimony regarding the condoms Bianca Sanders took from her apartment. Defendant asserts the "chain [of custody] has been broken and given the testimony of Bianca Sanders and the nurse, the state cannot be reasonably certain that the condoms are the same condoms used to commit a rape." (Appellant's Brief, 7.)
 {¶ 22} Bianca Sanders testified that she retrieved the condoms from the trash at her apartment and took them with her to the hospital. According to Sanders' testimony, she thought she then gave them to a nurse, who gave them to a police officer. Contrary to her testimony, however, the nurse testified she never had possession of the condoms. Indeed, Detective David McKee stated during his testimony that he received the condoms from Sanders and then turned them into the Columbus police property room. Defendant challenges the chain of custody based on the discrepancy in the witnesses' testimony concerning the person to whom Sanders gave the condoms.
 {¶ 23} "Although the state bears the burden of establishing a proper chain of custody, that duty is not absolute. * * * The state need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. * * * Moreover, breaks in the chain of custody go not to the admissibility of evidence, but to the weight afforded it." State v. Blevins (1987), 36 Ohio App.3d 147, 150. (Citations omitted.)
 {¶ 24} Here, the police officer testified he received the condoms directly from Sanders and took them to the property room. Sanders testified only that she thought she gave them to the nurse, who gave them to the police officer. Given the nurse's description of Sanders' agitated state at the hospital, the evidence allowed the conclusion that Sanders simply did not correctly recall to whom she gave the condoms. Indeed, defendant was allowed to cross-examine on the possibly conflicting testimony, thereby challenging the weight the jury should afford the evidence. In either scenario, however, the evidence did not suggest the condoms were tampered with or altered; rather, they were deposited with the police officer, who placed them in the property room. Accordingly, the trial court did not err in allowing the evidence. Defendant's second assignment of error is overruled.
 {¶ 25} Defendant's third assignment of error contends defendant did not receive a fair trial because the prosecution offered a personal opinion of defendant's guilt. During opening statement, the prosecution stated:
During this trial, you're going to hear testimony about how this man broke into two separate homes of two separate women and sexually assaulted them. They had no idea who this man was. But through thorough police investigation and modern science, we now know he did it. And at the conclusion of this trial, you're going to have a mountain of evidence that will prove to you beyond a reasonable doubt that he did it.
(Tr. 18.)
 {¶ 26} Defendant did not object to the statement. Accordingly, we review the assignment of error for plain error. Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." InState v. Barnes (2002), 94 Ohio St.3d 21, 27, the Ohio Supreme Court recently noted that "[b]y its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. * * * Second, the error must be plain. To be `plain' within the meaning of Crim.R. 52(B), an error must be an `obvious' defect in the trial proceedings. * * * Third, the error must have affected `substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." (Citations omitted.) "Even if a forfeited error satisfies these three prongs, however, Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them. We have acknowledged the discretionary aspect of Crim.R. 52(B) by admonishing courts to notice plain error `with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" Id., quoting State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 27} The record fails to reveal plain error. Initially, the prosecution's remark arguably is not a statement of opinion, but rather a summary of what the scientific evidence, primarily in the form of fingerprints and DNA evidence, would reveal about defendant. Even if, however, we were to assume the statement is impermissible opinion, we also note the record contains abundant evidence of defendant's involvement in the charged offenses.
 {¶ 28} Specifically, fingerprint evidence linked defendant to Haley's apartment, DNA evidence linked him to both Haley's and Sanders' apartments, the admissions of Sanders' rapist correspond to defendant's personal information, and the tattoos both victims observed match defendant's tattoos.
 {¶ 29} Moreover, defendant's method of operation is similar in both instances. Defendant gained access to each victim's apartment through windows, cutting the screens to enter the building. He stood over each victim while they slept, holding a knife. He, in each instance, did not take off his pants, but pulled them aside to expose his penis, and in both instances he put his penis first to the victim's mouth. In light of such substantial evidence, the prosecution's statement cannot be deemed to have affected the outcome of the trial. Defendant's third assignment of error is overruled.
 {¶ 30} Defendant's fourth assignment of error asserts the trial court's judgment is against the manifest weight of the evidence. When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. State v. Thompkins (1997),78 Ohio St.3d 380, 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"); Statev. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.PRIVATE Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 31} Defendant's fourth assignment of error does not note any particular deficiencies in the evidence other than the points argued in the first three assignments of error. Because those are without merit, they do not support defendant's contentions under the fourth assignment of error.
 {¶ 32} Nonetheless, if we examine the evidence presented at trial, we note that the state presented the testimony of both victims, with corroborating evidence in the form of fingerprint and DNA evidence. Both victims testified to defendant's illegal entrance into their apartment, to defendant's holding them against their will, and to defendant's forcing them to engage in sexual conduct. Their evidence, alone, supports the judgment of the trial court, in that cross-examination did not detract significantly from their testimony.
 {¶ 33} Moreover, defendant's contentions that Shannon Haley testified she was not raped are taken out of context. Haley testified to defendant's forcing her to perform fellatio on him. When she described the examination she received at the hospital, she stated she "wasn't actually raped. He violated me. I was not actually raped. It would kill me." (Tr. 155.) As subsequent questions clarified, she meant only that she did not need to be examined below the waist because, as she had explained to the nurse, "there had been no penetration of [her] vagina or [her] rectum." (Tr. 155-156.)
 {¶ 34} Defendant also contends Sanders' testimony is not sufficient to support the judgment because she did not notify the police immediately following the rape. Instead, she went to her boyfriend's house, and the two of them searched for defendant. Even if the delay could be deemed to impugn Sanders' credibility, Sanders explained the delay. Before defendant left her apartment, he told her he had been watching her for two days. He further instructed her not to call the police. With those two admonitions, Sanders was afraid to leave the apartment before daylight for fear she would encounter defendant, and she was afraid to call the police for fear of repercussions if she violated defendant's instructions not to call the police. Her explanation was a factor for the jury to weigh in assessing Sanders' credibility. DeHass, supra. The jury apparently found her testimony credible, and it adequately supports the jury's verdict. Defendant's fourth assignment of error is overruled.
 {¶ 35} Having overruled all four of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Brown and Sadler, JJ., concur.