{¶ 1} Following a jury trial, defendant-appellant Kevin Menser was convicted of the attempted burglary of the home of Andrea Johnson. Menser received a sentence of five years' imprisonment.
 {¶ 2} Menser now appeals, raising seven assignments of error that we address out of order.
 Sufficiency and Weight of the Evidence {¶ 3} In his fourth and fifth assignments of error, Menser argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
 {¶ 4} When reviewing an attack on the sufficiency of the evidence, we must determine "whether after viewing all probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[1]
 {¶ 5} In contrast, when reviewing a challenge to the weight of the evidence, this court sits a "thirteenth juror."[2] We review the record, weigh the evidence, and consider the credibility of the witnesses to determine whether the jury clearly lost its way and created a manifest miscarriage of justice.[3]
 {¶ 6} Andrea Johnson, the owner of the home that Menser attempted to burglarize, testified that she had gone to bed around 11:00 p.m. the night before the attempted burglary. She was awakened around 2:40 a.m. by her doorbell ringing. Johnson did not answer the door, and several minutes later she noticed the motion sensor light in the back of her home turn on. Johnson saw the shadow of someone moving across her deck and heard someone pulling on her back door. She attempted to call 911 for help, but was unable to do so because her home telephone line had been cut. Johnson used her cellular telephone to call 911 and locked herself in the bathroom with her son.
 {¶ 7} After the police arrived, Johnson watched from her window and saw the police pull someone out from under her deck. She recognized the suspect and stated that he had been around her neighborhood frequently and had once shoveled snow off her driveway. Johnson testified that the screen on her back window had been cut and that her motion light had been pulled out of its socket. Johnson additionally testified that, prior to the time she went to bed that night, the screen was intact, the motion light was in its socket and functioning, and her home telephone worked.
 {¶ 8} The state also presented the testimony of Officer Kenneth Kilgore. Officer Kilgore responded to Johnson's 911 call. As he arrived at Johnson's home, he received a dispatch from another unit stating that someone dressed in dark clothing had run to the rear of Johnson's residence. Officer Kilgore walked behind Johnson's home and used his flashlight to illuminate the area. He immediately found Menser hiding underneath Johnson's deck. Officer Kilgore testified that he asked Menser what he was doing under the deck, and Menser responded that he was "trying to rob the house." On cross-examination, Officer Kilgore stated that Menser did not have a knife or any other tool on him when he was arrested.
 {¶ 9} Menser testified on his own behalf. He stated that, prior to being arrested, he had spent the evening drinking alcohol at the home of a friend who lived almost directly across the street from Johnson. Menser testified that he needed to use the restroom while walking home, and that he had walked behind Johnson's home to relieve himself. As he was walking back to the front of Johnson's residence, he saw a police car driving down the street. Aware that he had a warrant out for his arrest, Menser took off running and hid underneath Johnson's deck.
 {¶ 10} Menser testified that, after being apprehended, the arresting officer had asked him why he was underneath the deck and that he had responded, "I'm hiding from you." According to Menser, the officer stated that he believed that Menser had been burglarizing the home. In response to this statement, Menser testified that he sarcastically responded, "[Y]eah, whatever." On cross-examination, Menser admitted that he had prior convictions for vandalism, felonious assault, and falsification.
 {¶ 11} Following our review of the record, we conclude that Menser's conviction for attempted burglary was supported by sufficient evidence. As we have stated, Johnson testified that her telephone lines and window screen had been cut, that her motion sensor light was pulled out of its socket, and that she had heard someone trying to open her back door. And Officer Kilgore testified that Menser stated that he had been trying to rob Johnson's home. Viewing the evidence in the light most favorable to the prosecution, the jury could reasonably have concluded that Menser had attempted, by both force and stealth, to trespass in Johnson's home, while she was likely to be present, with the purpose to commit a criminal offense therein.[4]
 {¶ 12} We further conclude that Menser's conviction was supported by the manifest weight of the evidence. The jury was entitled to weigh the credibility of the witnesses, and we cannot conclude that it lost its way and created a manifest miscarriage of justice in finding Menser guilty of attempted burglary. Menser's fourth and fifth assignments of error are overruled.
 Jail Clothing {¶ 13} In his third assignment of error, Menser argues that he was deprived of his right to a fair trial and due process of law when he was compelled to stand trial in identifiable jail clothing.
 {¶ 14} The law is well settled that a conviction is not automatically reversible merely because a defendant has stood trial in jail clothing. A defendant may be prejudiced by standing trial in such attire.[5]
But, conversely, many defendants specifically elect, as a matter of trial strategy, to be tried in jail clothing.[6] Consequently, we must determine "whether the accused's appearance before the jury in jail clothes was compelled."[7]
 {¶ 15} In this case, the record does not support the contention that Menser was compelled to stand trial in jail clothing. It contains no objection from Menser concerning his attire. "[T]he failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."[8]
 {¶ 16} Accordingly, Menser's third assignment of error is overruled.
 Ineffective Assistance {¶ 17} In his first assignment of error, Menser argues that he received ineffective assistance of trial counsel. Specifically, Menser argues that his counsel was ineffective for failing to request that the jury be instructed on the lesser-included offense of trespass.
 {¶ 18} To succeed on a claim of ineffective assistance of counsel, an appellant must demonstrate that counsel's performance was deficient and that the appellant was prejudiced by the deficient performance.[9] To be deemed deficient, counsel's behavior must have fallen below an objective standard of reasonableness.[10] To demonstrate prejudice, the appellant must show that, but for counsel's deficient performance, the outcome of the proceedings would have been different.[11] When reviewing a claim of ineffective assistance, we are highly deferential of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[12]
 {¶ 19} Generally, a "[f]ailure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel."[13] But Menser contends that because his counsel argued to the jury that Menser was guilty of trespass and not attempted burglary, counsel's trial strategy should have included a requested instruction on trespass. Menser further argues that he faced no additional consequences if convicted of trespass, as he had already served the maximum sentence available for this offense while incarcerated pretrial.
 {¶ 20} Although Menser's contentions are correct, we cannot conclude that he received ineffective assistance of counsel. By arguing to the jury that Menser was guilty of trespass and not attempted burglary, counsel insinuated that Menser had been overcharged and, as a result, should be acquitted. We will not second-guess counsel's trial strategy.
 {¶ 21} Moreover, Menser cannot demonstrate that the outcome of his trial would have been different but for counsel'sfailure to request a trespass instruction. An instruction on a lesser-included offense is only warranted "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense."[14]
 {¶ 22} The evidence presented at trial would have supported a conviction for the lesser-included offense of trespass.[15] But it would not have reasonably supported an acquittal on the charge of attempted burglary. The jury heard testimony that Johnson's phone line and window screen had been cut, that her motion light had been pulled out of its socket, and that someone had tried to open her back door. The evidence clearly supported the conclusion that someone had attempted to burglarize Johnson's home. And for the jury to conclude that Menser had merely been trespassing in Johnson's yard to relieve himself, it would have also had to conclude that another person had attempted to burglarize Johnson's home simultaneously. This was not plausible, let alone reasonable.
 {¶ 23} Accordingly, a jury instruction on trespass would not have been appropriate. We conclude that Menser did not receive ineffective assistance of counsel, and we overrule his first assignment of error.
 Jury Instructions {¶ 24} Menser argues in his second assignment of error that his counsel's failure to request a jury instruction on the lesser-included offense of trespass constituted plain error. Plain error is only present when "but for the error, the outcome of the trial clearly would have been otherwise."[16]
 {¶ 25} Because we have concluded in our preceding discussion that the evidence presented did not warrant a trespass instruction, we find no plain error in the circumstances before us. Menser's second assignment of error is overruled.
 Cumulative Error {¶ 26} In his sixth assignment of error, Menser argues that the cumulative effect of the errors that occurred during his trial deprived him of a fair trial. Menser correctly asserts that the cumulative effect of individually harmless errors, when considered together, may deprive a defendant of a fair trial.[17]
 {¶ 27} But because we have found no error in the trial, harmless or otherwise, there is no cumulative effect to consider. Menser's sixth assignment of error is overruled.
 Sentencing {¶ 28} In his seventh assignment of error, Menser argues that the trial court made unconstitutional findings before imposing sentence. Menser is correct.
 {¶ 29} Menser received the maximum sentence of five years' imprisonment for his offense. Before imposing the maximum sentence, the trial court made findings under R.C. 2929.14(C).
 {¶ 30} The Ohio Supreme Court recently determined, in State v.Foster, that R.C. 2929.14(C) is unconstitutional because it requires "judicial factfinding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant."[18]
 {¶ 31} But the court determined that R.C. 2929.14(C) could be severed, and that trial courts no longer need to make findings or provide reasons in support of a maximum sentence.[19] Because Menser was sentenced under this unconstitutional provision, we must vacate his sentence and remand for resentencing.
 {¶ 32} Accordingly, we sustain Menser's seventh assignment of error. Menser's sentence is vacated, and this case is remanded for resentencing in accordance with law. The judgment of the trial court is affirmed in all other respects.
Judgment affirmed in part, sentence vacated, and cause remanded.
RALPH WINKLER, retired, from the First Appellate District, sitting by assignment.
[1] State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717.
[2] State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52,678 N.E.2d 541.
[3] Id.
[4] See R.C. 2911.12(A)(2) and 2923.02(A).
[5] See Estelle v. Williams (1976), 425 U.S. 501, 504,96 S.Ct. 1691.
[6] Id. at 508.
[7] State v. Miller, 1st Dist. No. C-010543, 2002-Ohio-3296, at ¶ 9, citing State v. Dorsey (Apr. 23, 1998), 8th Dist. No. 72177.
[8] Estelle v. Williams, supra, 425 U.S. at 512-513.
[9] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052.
[10] Id. at 688.
[11] Id. at 694.
[12] Id. at 689.
[13] State v. Griffie, 74 Ohio St.3d 332, 333, 1996-Ohio-71,658 N.E.2d 764.
[14] State v. Thomas (1988), 40 Ohio St.3d 213, 216,533 N.E.2d 286.
[15] See R.C. 2911.21.
[16] State v. Long (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.
[17] State v. Johnson (2000), 140 Ohio App.3d 385, 391,747 N.E.2d 863.
[18] State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph one of the syllabus.
[19] Id. at paragraphs two and seven of the syllabus.