[Cite as *State v. Trowbridge*, 2013-Ohio-1749.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | APPEAL NO. C-110541 |
| | | TRIAL NO. B-1101843 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| SHANNON TROWBRIDGE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 1, 2013

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk,* for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**CUNNINGHAM, Judge.**

{¶1}   Shannon Trowbridge appeals the judgment of the Hamilton County Court of Common Pleas convicting her on one count of aggravated robbery, with a firearm specification, and one count of having a weapon while under a disability, and sentencing her to an aggregate term of 15 years in prison.   For the reasons that follow, we affirm the trial court's judgment.

### I. Background Facts and Procedure

{¶2}   On January 26, 2011, the BP gas station market on Harrison Avenue in Cincinnati was robbed.  Eyewitnesses described the suspect as a woman with a mole or spot on her face, wearing a loose fitting yellow hoodie, white shoes, and blue pants, and holding what appeared to be a gun under a tan jacket drapped across her arm.  The robbery and the robber's image were captured on the store's surveillance camera, but the woman's facial features were not clearly visable.

{¶3}   Linda Cox, the assistant manager of the store, was working the cash register when the robber ordered her to give all the money inside and threatened "to blow her head off" if she screamed or made a wrong move.   Another employee, Jasmine Kendrick, was on the telephone after just finishing her shift.  When the robber saw her, she told Kendrick to "hang up the phone before I blow your head off."  Both Cox and Kendrick recalled that the robber said that she had "just got[ten] out of Marysville for doing the same thing" and that she would shoot them without hesitation.  And both were able to see most of the robber's face at a close range.

{¶4}   Christopher Keairns, a customer, walked into the BP market as the robbery was taking place.  According to Keairns, the robber, who had money in one hand and what appeared to be a gun in the other, turned to him before backing out of the store.  She said, "If anyone follows me out the door, I'm going to shoot this place

up." Keairns also saw the robber's face at a close range, although it was partially obstructed by the hood of her sweatshirt.

{¶5} After the robber left the store with $413 from the cash register, Kendrick called 911, and Cox pushed the store's panic buttons. Officer Lewis Arnold responded to the robbery and received descriptions of the suspect from Cox, Kendrick, and Keairns. Arnold discovered clothing matching the eyewitnesses' descriptions of the suspect's attire in a nearby building, and collected the clothing as evidence.

{¶6} Cincinnati Police Specialist Les Mendes was assigned to the case. Based on Cox's and Kendrick's statements that the robber claimed to have been recently released from "Marysville," Mendes requested a list of any former inmates at the Ohio Reformatory for Women located in Marysville, Ohio, who had recently been released to the area of the robbery. The Adult Parole Authority provided Mendes with only one name—Shannon Trowbridge. When Mendes ran Trowbridge's information through his database, he learned that her physical characteristics, including a mole or mark on her face, matched the descriptions provided by Cox, Kendrick, and Keairns, and that Trowbridge lived near the BP market that had been robbed.

{¶7} Cox, Kendrick, and Keairns all identified Trowbridge as the robber in a pretrial photographic lineup administered by a blind administrator. But none of the DNA tested from the items of clothing recovered near the scene of the crime matched Trowbridge's DNA.

{¶8} The grand jury returned an indictment charging Trowbridge with aggravated robbery, robbery, and having weapons while under a disability. The matter proceded to a jury trial.

{¶9} At trial, the state presented the surveillance video of the robbery, still photographs derived from the video of the offense, and the testimony of the three

eyewitnesses who had viewed the robber at a close range inside the BP market. Cox, Kendrick, and Keairns each unequivocally identified Trowbridge as the robber and testified that they had identified her in a pretrial photographic lineup. They further testified that Trowbridge had threatened to harm them with what appeared to be a gun covered up by a jacket. Cox and Kendrick also testified, without objection, that the robber had bolstered her threats by telling them that she had just been released from "Marysville" for doing the "same thing."

{¶10} Mendes testified about the investigation that led him to Trowbridge, including Cox's and Kendrick's statements that the robber claimed to have been recently released from the Marysville reformatory. He conceded that Trowbridge's DNA was not found on any of the clothing that the police recovered near the scene, but he explained that he could not conclude that she had not worn them based on that fact. He arrived at this conclusion after taking into account that Trowbridge had worn the items for a short time on a cold day and that the surveillance video demontrated that the clothing was loose fitting.

{¶11} After the state presented its last witness, but before it had offered its exhibits into evidence, Trowbridge prematurely moved under Crim.R. 29(A) for an acquittal on all charges. The court began to rule on the motion and asked the state whether the parties had entered into a stipulation concerning the weapons-under-a-disability offense. The prosecutor informed the court that Trowbridge had stipulated that she had been convicted of burglary in 2008. The trial court then denied the Crim.R. 29 motion and admitted the state's exhibits into evidence, including a certified copy of Trowbridge's 2008 judgment of convicton for burglary in violation of R.C. 2911.12(A)(2). The state then rested. Trowbridge offered into evidence several exhibits that she had used in cross-examining the state's witnesses and then rested.

{¶12} The jury ultimately found Trowbridge guilty of all offenses. The trial court sentenced Trowbridge to ten years for the aggravated robbery offense, three years for the accompanying firearm specification, and two years for the weapons-under-a-disability offense. The court merged the robbery offense into the aggravated-robbery offense. The sentences were to be served consecutively, for an aggregate term of 15 years.

## II. Plain Error—Hearsay and Evidence of other Bad Acts

{¶13} In her first assignment of error, Trowbridge argues that the trial court erred by repeatedly allowing testimony from Cox, Kendrick, and Officer Mendes that she had previously been imprisoned in Marysville for another crime.[1] Trowbridge generally argues that this testimony was inadmissible under the rules of evidence because it was hearsay, that it was inadmissible under the rules of evidence and R.C. 2945.59 because it constituted evidence of prior bad acts, and that it was inadmissible under the rules of evidence because the probative value of the evidence was substantially outweighed by the danger that the jury would base its finding of guilt on the forbidden inference.

{¶14} Trowbridge concedes that trial counsel failed to object to any of this testimony, thus we apply a plain-error analysis. *State v. Lewis*, 1st Dist. Nos. C-050989 and C-060010, 2007-Ohio-1485, ¶ 39, citing Evid.R. 103(A)(1) and (D) and Crim.R. 52(B). The Ohio Supreme Court has set forth the standard for noticing plain error:

> First, there must be an error, *i.e.*, a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' * * * an error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have affected 'substantial rights.' We have interpreted this

---

[1] Trowbridge also claims that Officer Mendes testified about "[her] probation officer," but the record does not support this claim.

aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

*State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

### A. Hearsay

{¶15} "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶16} In this case, Cox and Kendrick both identified Trowbridge as the person who stated in their presence that she had been previously incarcerated in Marysville for a similar act. Although this testimony was offered in part to show the impact of the robber's statement on Cox and Kendrick, i.e., why they feared she would shoot them, the state also offered the statement in evidence for its truth—that the robber had recently been released from the Marysville reformatory. Despite this use, we conclude that Cox's and Kendrick's testimony was not hearsay.

{¶17} The rules of evidence provide that a statement is not hearsay if the statement "is offered against a party" and it is "the party's own statement." Evid.R. 801(D)(2)(a). Here Trowbridge was a party-defendant, and the testimony was offered against her at trial. Thus Cox's and Kendrick's testimony concerning the statement that they unequivocally attributed to Trowbridge qualified as the admission of a party opponent as defined in Evid.R. 801(D)(2)(a). *See State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 112 ("[a] defendant's own out-of-court statements, offered against him at trial, are not hearsay"); *State v. Williams*, 10th Dist. No. 03AP-287, 2003-Ohio-6663, ¶ 17. Therefore, Cox's and Kendrick's testimony concerning Trowbridge's statement was not hearsay, and it was not inadmissible on hearsay grounds.

{¶18} Officer Mendes's testimony, however, involved Cox's and Kendrick's statements to him that the robber indicated she had recently " 'got[ten] out of Marysville for [doing] the same thing.' " This testimony would be hearsay if it were offered to prove the truth of the matter asserted. But Officer Mendes's testimony was offered to explain his course of investigation; i.e., why he sought information about former inmates at the reformatory in Marysville who had been recently released to the area of the robbery and how he came to suspect Trowbridge. "Where statements are offered to explain an officer's conduct while investigating a crime, such statements are not hearsay." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987), citing *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Our review demonstrates that Officer Mendes's testimony was admissible for this purpose. *Id.* at 149-150.

### B. Other-Act Evidence

{¶19} Trowbridge also argues that the admission of this testimony violated Evid.R. 404(B) and the related statute R.C. 2945.59, as well as Evid.R. 403(A).

{¶20} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B); *see* R.C. 2945.59. Though offered for an admissible purpose, the evidence must be excluded if the trial court determines that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice, the confusion of the issues, or misleading the jury. Evid.R. 403(A).

{¶21} The state argues that these statements were admitted for proper purposes under Evid.R. 404(B). We agree. The testimony was admissible to prove Trowbridge's identity and intent and to establish the "threat" element of the underlying theft offense and the firearm specification.

{¶22} Here Kendrick and Cox testified that the robber told them that she had just been released from "Marysville." Detective Mendes testified that his investigation revealed that Trowbridge had been recently released from the Reformatory for Women located in Marysville, Ohio, and that she was the only inmate recently released to the area of the robbery. Because Trowbridge's admission that she had recently been released from "Marysville" furthered the state's identification of Trowbridge as the BP market robber, the evidence was admissible for this limited purpose.

{¶23} Additionally, Kendrick and Cox testified that the robber's claim to a prior criminal history heightened their fear that she would have shot them had they not cooperated with the robbery. Thus, the evidence tended to show Trowbridge's intent and the "threat" element of the offenses, and it was admissible for these limited purposes. *See* Evid.R. 404(B); R.C. 2945.59; *State v. Wilson*, 8th Dist. No. 92148, 2010-Ohio-550.

{¶24} Trowbridge's argument that the testimony was prejudicial and should have been excluded under Evid.R. 403(A) is equally untenable. This rule provides for the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of "unfair" prejudice, of confusion of the issues, or of misleading the jury. Generally, "unfairly prejudicial" evidence appeals to the jurors' emotions rather than to their intellect. *See State v. Crotts*, 104 Ohio St.3d 43, 437, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 24.

{¶25} Trowbridge, by failing to object below, deprived the trial court of the opportunity to make the subjective determination of whether the challenged evidence was unfairly prejudicial. *See id.* at ¶ 25. And although we do not doubt that this testimony prejudiced Trowbridge, we cannot say that it did so unfairly. The state did not use this evidence to appeal to the jurors' emotions, but to bolster its identification evidence, which was diminished by the results of the DNA testing, and

to demonstrate Trowbridge's intent to use the firearm, even though she had concealed it under a jacket during the robbery. Therefore, we conclude that the probative value was not substantially outweighed by the danger of unfair prejudice.

{¶26} In conclusion, because the challenged testimony related to Trowbridge's prior imprisonment in "Marysville" for doing the "same thing" was admissible, Trowbridge has failed to demonstrate plain error. Accordingly, we overrule the first assignment of error.

### III. Identifiable Jail Clothing

{¶27} In her second assignment of error, Trowbridge contends that the trial court prejudiced her right to a fair trial when it failed to honor her request to be tried in civilian clothing during the trial and did not delay the start of the trial for her to obtain civilian clothing.

{¶28} The United States Supreme Court has recognized that a defendant's right to a fair trial may be infringed by appearing before a jury in jail clothing. *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). But the court declined to create a strict rule requiring the reversal of all convictions in which the defendant appeared before the jury in prison clothing because it recognized that a defendant may purposely elect to stand trial in jail clothing as a trial strategy to elicit sympathy. *See id.* at 507-508. As a result, to demonstrate a constitutional violation, the defendant must demonstrate that she was "compel[led] * * * to stand trial before a jury while dressed in identifiable prison clothing." *Id.* at 512. *See also State v. Miller*, 1st Dist. No. C-010542, 2002-Ohio-3296, ¶ 9, citing *State v. Dorsey*, 8th Dist. No. 72177, 1998 Ohio App. LEXIS 1727 (Apr. 23, 1998).

{¶29} Although Trowbridge argues on appeal that the trial court "failed to honor her request to be tried in civilian clothes," an argument suggesting compulsion, the factual basis for her argument is not demonstrated in the record.

Trowbridge simply did not ask to be tried in civilian clothes or object to her wardrobe.

{¶30} The record demonstrates that after voir dire and the jury's exit from the courtroom, the trial court sua sponte raised the issue of Trowbridge's attire. The following discussion then transpired:

{¶31} Prosecutor: Okay. I just wanted to put on the record * * * that the defendant, you know, chose to wear the jail clothing she has on now, and * * * that's what she wanted to wear today, and proceed to trial.

{¶32} Trowbridge: I didn't—really I didn't know—I mean.

{¶33} Court: Well, do you have any clothing available, ma'am?

{¶34} Trowbridge: I mean, yeah. My family could have brought me some, but it just didn't cross my mind.

{¶35} Court: All right. Well, maybe you can contact them tonight.

{¶36} The court then made reference to the five months that Trowbridge had been in jail, and told Trowbridge to contact her family over the evening if she wished to do so. She then replied, "I don't think I can do it."

{¶37} When the jury returned to the courtroom, the judge instructed the jurors that they were not to make any inference of guilt from the fact that Trowbridge was wearing jailhouse clothing. The issue of Trowbridge's clothing was not raised again.

{¶38} The defendant's failure "to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." *Estelle*, 425 U.S. at 512-513, 96 S.Ct. 1691, 48 L.Ed.2d 126; *see State v. Gandy*, 1st Dist. No. C-050804, 2006-Ohio-6282, ¶ 5; *State v. Menser*, 1st Dist. No. C-050615, 2006-Ohio-6286, ¶ 15; *Miller*, 1st Dist. No. C-010543, 2002-Ohio-3296, at ¶ 9.

{¶39} In this case, Trowbridge, who was represented by counsel, did not object to proceeding to trial in jail clothing after the trial court raised the issue of her clothing. Moreover, Trowbridge made no effort to obtain street clothes and indicated that she would not make an effort. We can only conclude from these facts that her appearance before the jury in prison clothing was not compelled by the court. *See Dorsey*, 8th Dist. No. 72177, 1998 Ohio App. LEXIS 1727 (finding no compulsion to stand trial in prison clothing where the court sua sponte inquired about the defendant's clothing and the defendant failed to communicate a desire to be tried in civilian clothing). Therefore, Trowbridge has failed to demonstrate a denial of her right to a fair trial. Accordingly, we overrule the second assignment of error.

### IV. Sufficiency- and Weight-of-the-Evidence Claims

{¶40} In her fourth assignment of error, which we address next, Trowbridge argues that her convictions for aggravated robbery with a firearm specification and having weapons under a disability were not supported by sufficient evidence and were against the manifest weight of the evidence. We disagree.

### A. Sufficiency

{¶41} In reviewing a claim that a conviction is not supported by sufficient evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### 1. Aggravated Robbery with a Three-Year-Firearm Specification

{¶42} Trowbridge was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1). That statute provides, in relevant part, that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after * * *,

11

shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶43} Before Trowbridge could be found guilty of the three-year-firearm specification accompanying the aggravated-robbery conviction, the state had to prove that Trowbridge "had a firearm on or about [her] person * * * while committing the offense and displayed the firearm, brandished the firearm, indicated that [she] possessed the firearm, or used it to facilitate the offense." R.C. 2941.145. *See* R.C. 2929.14(D)(1)(a).

{¶44} The state presented testimony from three eyewitnesses—Cox, Hendrick, and Keairns—who unequivocally identified Trowbridge as the BP market robber. These eyewitnesses had seen Trowbridge at close range and were able to see her face even though she wore a hood. These eyewitnesses further testified that she had held what appeared to be a firearm in her hand underneath a jacket and that she had repeatedly threatened to shoot them with it. The video surveillance corroborated this testimony. Additionally, Trowbridge was the only woman in the area who had recently been released from the Marysville reformatory, a claim made by the robber during the robbery. After reviewing this evidence, we conclude that the state met its burden of proof with respect to the offense of aggravated robbery and the accompanying firearm specification.

### 2. Having Weapons Under a Disability

{¶45} R.C. 2923.13(A)(2) establishes the elements that the state must prove to support a conviction for having weapons under a disability. It provides, in relevant part, that "unless relieved from disability, * * * no person shall knowingly acquire, have, carry, or use any firearm * * * if * * * the person * * * has been convicted of any felony offense of violence." Evidence of Trowbridge's requisite prior conviction was admitted into evidence, and the eyewitnesses' testimony as well

12

as the surveillance footage demonstrated that Trowbridge had carried a firearm. Accordingly, we conclude that the evidence was sufficient to prove that Trowbridge knowingly carried and used a firearm while under a disability.

### B. Weight of the Evidence

{¶46} In her argument regarding the manifest weight of the evidence, Trowbridge attacks the credibility of the eyewitnesses. But the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. We find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence adduced on the charged offenses, lost its way or created such a manifest miscarriage of justice as to warrant the reversal of Trowbridge's convictions. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶47} Based upon our review of the record, we determine that Trowbridge's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. Accordingly, we overrule the fourth assignment of error.

### V. Ineffective-Assistance-of-Trial-Counsel Claim

{¶48} In her third assignment of error, Trowbridge argues that she was denied the effective assistance of trial counsel. To succeed on a claim of ineffective assistance of trial counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that she was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. To establish the necessary prejudice, the defendant must demonstrate a reasonable probability exists that the outcome of the proceeding would have been different if not for counsel's errors. *Bradley* at paragraph three of the syllabus.

{¶49} When reviewing counsel's performance, we must "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland* at 690.

{¶50} Trowbridge contends that counsel was ineffective because he failed (1) to object to the admission of other-act testimony and the prosecutor's use of leading questions; (2) to properly argue and renew a Crim.R. 29 motion; and (3) to file a motion to suppress pretrial identification evidence.

{¶51} Trowbridge argues that trial counsel was ineffective for failing to object to testimony concerning Trowbridge's admission that she "had just got[ten] out of Marysville for [doing] the same thing." But we have already held that this testimony was admissible for the limited purposes of establishing Trowbridge's identity and intent, and the element of threat. Thus, counsel was not deficient for failing to object to the admission of this testimony. Similarly, we cannot say that trial counsel was deficient for failing to object to leading questions by the prosecutor. The trial court has discretion to allow leading questions on direct examination, and the questioning here was within the bounds of that discretion. *See* Staff Note to Evid.R. 611(C); *State v. D'Ambrosio*, 67 Ohio St.3d 185, 190, 616 N.E.2d 909 (1993).

{¶52} Next Trowbridge challenges defense counsel's performance with respect to the Crim.R. 29 motion. But any error in counsel's performance was not prejudicial where the state presented sufficient evidence of each element of the offenses.

{¶53} Finally, Trowbridge contends that defense counsel was deficient for failing to move to suppress the "identification evidence." We assume that Trowbridge is referring to the eyewitnesses' pretrial identification testimony. But Trowbridge has not presented any grounds for suppression, and counsel's failure to file a motion to suppress is not a "per se" deficiency. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000). Thus, Trowbridge has not demonstrated that

14

counsel's failure to file a motion to suppress was deficient. *See State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65 ("[t]o establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question").

{¶54} In summary, Trowbridge has failed to demonstrate that any deficient performance by counsel prejudiced her. Accordingly, we overrule the third assignment of error.

## VI. Excessive-Sentence Claim

{¶55} In her final assignment of error, Trowbridge argues that the trial court imposed an excessive aggregate sentence. The trial court imposed a ten-year term for the aggravated robbery, a first-degree felony offense, to be served consecutively to the three-year mandatory term for the accompanying firearm specification, and a two-year term for the weapons offense, a third-degree felony, for an aggregate sentence of 15 years of imprisonment.

{¶56} We conduct a two-part review of Trowbridge's sentence of imprisonment. *See State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. We must first examine the sentencing court's compliance with all applicable rules and statutes to determine whether the sentence is clearly and convincingly contrary to law; if not, we must review the sentence to determine whether the trial court abused its discretion in imposing it. *See State v. Brown*, 1st Dist. Nos. C-100309 and C-100310, 2011-Ohio-1029, ¶ 13, citing *Kalish* at ¶ 14 and 17.

{¶57} Here the aggregate sentence imposed was not contrary to law. The terms imposed were within the range provided for the degree of the offenses. *See* R.C. 2929.14. And the court was required to impose a three-year term for the accompanying firearm specification. R.C. 2929.14(B)(1)(a). The trial court was not obligated to engage in judicial fact-finding before making the sentences for the

aggravated robbery and the weapons offenses consecutive.[2]  *Brown* at ¶ 14, citing *Kalish* at ¶ 11.  Further, we may presume that the trial court considered the relevant sentencing statutes, including R.C. 2929.11 and R.C. 2929.12, although it did not specifically state that it did.  *Brown* at ¶ 14, citing *Kalish* at fn. 4.

{¶58}  Having presided over the jury trial and having ordered a presentence investigation, the trial court had knowledge of the facts of the offenses, Trowbridge's prior conviction, and her arguments in mitigation.  On the state of this record, we cannot say that the trial court imposed an excessive aggregate sentence or that the trial court acted unreasonably, arbitrarily, or unconscionably in imposing it.

### VII. Conclusion

{¶59}  The judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

---

[2] Trowbridge was sentenced before the effective date of 2011 Am.Sub.H.B. No. 86.