DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a jury trial, in which the trial court found appellant, Shawn D. Jackson, guilty of one count of possession of crack cocaine, and sentenced him to serve five years in prison. On appeal, appellant sets forth the following assignment of error:
 {¶ 2} "The appellant was prejudiced by the ineffective assistance of counsel." *Page 2 
 {¶ 3} The undisputed, relevant facts are as follows. On February 28, 2006, members of the Toledo Police SWAT team and Vice Squad raided an upper duplex apartment, located at 2927 Stickney Avenue, in Toledo, Ohio. Appellant and a female acquaintance were in the apartment at the time of the raid, which was executed pursuant to a search warrant. After searching the apartment, police found guns, pictures of appellant, and several bags of what was later determined to be crack cocaine. In addition, a bag of crack cocaine was found outside on the ground, near the rear entrance to the building.
 {¶ 4} On May 1, 2006, the Lucas County Grand Jury indicted appellant on one count of possession of crack cocaine, in violation of R.C.2925.11(A) and (C)(4)(d), a second degree felony; one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(2) and (C)(4)(f), a first degree felony[1]; and one count of having a weapon while under disability, in violation of R.C. 2923.13(A)(3), a third degree felony.
 {¶ 5} Appellant was arraigned on May 11, 2006. An initial trial date was set for August 23, 2006; however, it was later rescheduled for October 3, 2006. When appellant failed to appear for trial on that date, a warrant was issued for his arrest. Bond was set at $75,000, with no ten percent. On December 13, 2006, appellant appeared in court, and a new trial date was set for January 4, 2007. On that date, appellant appeared in court without an attorney, and asked the court to appoint an attorney to represent him. On January 24, 2007, appellant again failed to appear for a scheduled pretrial hearing. *Page 3 
Another warrant for his arrest was issued, and bond was set as follows: $25,000 as to Count 1; $25,000 as to Count 2; and $15,000 as to Count 3, all with no ten percent. On February 22, 2007, appellant appeared in court for another pretrial hearing. Because appellant was unable to post bond, he remained in custody from that day until the commencement of his trial.
 {¶ 6} On April 12, 2007, appellant filed a motion to suppress certain statements he made to Toledo Police officers on February 28, 2006. A hearing on the motion was held on April 16, 2007, the first day of appellant's jury trial, before a jury was chosen. Testimony was presented at the suppression hearing by Toledo Police Detective William Bragg.
 {¶ 7} Bragg testified that, before entering the premises, police heard the sound of a window breaking and saw a "black" man's hand coming out of a back window and dropping a baggie into the backyard. The baggie was later found to contain crack cocaine. Bragg also testified that, upon entering the apartment, police found more drugs, several guns, and pictures of appellant taped to the wall of a bedroom. Bragg stated that he interrogated appellant in the apartment, after reading appellant his Miranda rights. He did not ask appellant to sign a Miranda waiver. Bragg further stated that, during the interview, appellant freely admitted that all the drugs in the apartment were his; however, he denied owning any of the guns. Appellant also told Bragg that he did not live in the apartment, but he sometimes uses the premises to sell a little cocaine just "to get by." Bragg also stated that appellant was treated at the scene for a cut on his hand. *Page 4 
 {¶ 8} On cross-examination, Bragg testified that his initial police report, which was prepared within days after the raid, did not contain appellant's admission that the drugs were his. However, Bragg testified that several months later, after tests confirmed the baggies contained cocaine, he prepared a supplemental report which contained appellant's admission.
 {¶ 9} After Bragg's testimony, the trial court found that appellant's willingness to be interviewed after hearing his Miranda rights constituted an implied waiver of those rights. On that basis, the trial court denied the motion to suppress.
 {¶ 10} The matter proceeded to a jury trial, where the prosecutor presented testimony by Toledo Police Officer Matthew Kovacs, Lieutenant Dan Gerken, Sergeant Roque Brown, Detective Todd Miller, Detective Kenneth DeWitt, forensic technologist Chadwyck Douglas, and Detective Bragg.
 {¶ 11} Officer Kovacs testified that he was part of the SWAT team that initially went into the apartment, where they found guns. Kovacs stated that police officers may have fired "distractors" into the side windows of the apartment before entering; however, they did not break the second floor rear window.
 {¶ 12} Lieutenant Gerken testified that devices called "knee knockers" were fired through the apartment windows; however, he was not sure which windows were broken. Gerken explained that knee-knockers are small pieces of wood that are fired into a building, where they bounce around and distract the occupants, hopefully preventing the destruction of evidence. Gerken also testified that he overheard appellant telling Bragg *Page 5 
the drugs in the apartment were his; however, appellant denied owning the guns. Gerken stated that he saw a broken window at the rear of the apartment, above the kitchen sink.
 {¶ 13} Sergeant Brown testified that, during the raid, he and two other officers were stationed at the rear of the apartment building. Brown further testified that he saw knee-knockers fired into the side windows of the building, but not the back. Brown stated that he heard glass breaking in the back of the building, and saw a black male "throw out a plastic baggie," which Brown later retrieved. Later testing confirmed that baggie contained cocaine. Brown also stated that, once inside the apartment, he "chastised" appellant for throwing the baggie out the window. Appellant apologized, and stated he was not trying to hit Brown with the baggie. However, Brown stated that he did not reduce appellant's comments to writing.
 {¶ 14} Detective Miller testified that he was in the backyard with Brown when a black male punched his unprotected fist through the kitchen window, and threw out a baggie. Miller further testified that he had a clear view of the back of the house, and that a light was on in the kitchen at the time. Miller stated that, after Brown picked up the baggie, the officers went upstairs, where they saw a hole in the back window. A camera was positioned above the window, with a clear view of the back stair well. Miller stated that, in his experience, such cameras are often used to monitor premises where drug trafficking takes place.
 {¶ 15} On cross-examination, Miller stated that the hand coming through the back window had no protective wrapping, and the person who dropped the baggie was not *Page 6 
wearing a uniform. Miller further stated that only police officers, appellant, and appellant's female companion were present when he went into the apartment.
 {¶ 16} Detective DeWitt testified that he watched the front of the building during the raid. When he entered the apartment, he saw two people, a rifle, drugs, and pictures of appellant holding a gun and cash. DeWitt stated that there were 12 to 14 officers in the apartment. He further stated that he heard police fire several rounds of knee-knockers into the structure, and that there was broken glass "all over the place."
 {¶ 17} After DeWitt testified, court was recessed for the day. The next day, before the jury returned to the courtroom, the prosecution asked the trial court to order appellant to remove a Bible that was prominently displayed on the defense table. When the trial court asked defense counsel for his opinion, counsel replied:
 {¶ 18} "Well, I don't particularly like him to have that out there. I think it's a crock of s — t. But, oh — I guess that is on the record. Wasn't it. Oh, well." Thereafter, the trial court stated: "I'm not going to order that a defendant can't have a Bible in the courtroom." The objection was overruled, and the trial resumed.
 {¶ 19} Chadwyck Douglas, a forensic technologist, stated that tests he performed on the baggie found in the backyard confirmed that it contained 18.63 grams of crack cocaine. Detective Bragg then testified that he entered the apartment after the SWAT team had secured the premises, separated appellant and Matthews, read appellant his Miranda rights, and proceeded to interview him. Bragg stated that appellant said "everything here belongs to me" except the guns. Bragg also stated that appellant denied *Page 7 
owning or renting the apartment; however, pictures of appellant were "taped to a wall in the back bedroom," and similar pictures were found throughout the apartment.
 {¶ 20} On cross-examination, Bragg stated that he filed two reports of the incident. The first was filed within a "day or so" of the raid and the second, a supplemental report, was filed two months later, after Douglas' tests confirmed that the substance taken in the raid were, in fact, cocaine. Bragg further stated that his account of appellant's statements in the supplemental report were copied "verbatim" from his notes. Bragg testified that police officers did not take pictures or fingerprints at the scene, because appellant admitted to owning the drugs and several detectives saw appellant throw a baggie out of the kitchen window.
 {¶ 21} At the close of Bragg's testimony, the prosecution rested. Defense counsel then made a motion for acquittal, which was denied, after which the defense presented testimony by Randysha Matthews.
 {¶ 22} Matthews testified that she and appellant were on the couch in the front room of the apartment when "stuff" started coming through the windows, followed by police officers coming through the door. Matthews further testified that appellant could not have thrown a baggie out the back window, because he did not leave the front room.
 {¶ 23} At the close of the all the testimony, the prosecution rested. Both sides then presented closing arguments to the jury.
 {¶ 24} In his closing argument, the prosecutor stated that Brown saw appellant stick his unprotected hand through the window, resulting in a cut on appellant's hand. *Page 8 
The defense objected to comments about the cut, on grounds that such evidence was not before the jury. In a sidebar conference, the trial court and both parties discussed the issue, after which it was determined that evidence of appellant's cut was presented during the suppression hearing, but not during the jury trial. The trial court sustained defense counsel's objection, and advised the jury to disregard any comments about the cut.
 {¶ 25} In his closing, defense counsel reminded the jury that appellant's statements regarding the cocaine were not in Bragg's initial report, but were added two months later, after the substance in the baggies tested positive for cocaine. Defense counsel then stated that the record contained no evidence that appellant received a cut on February 28, 2006. After receiving instructions from the trial court, the jury retired to begin deliberations.
 {¶ 26} The next day, the jury found appellant guilty of possessing crack cocaine (Count 1), and not guilty of trafficking in cocaine or having a weapon while under disability (Counts 2 and 3). On May 9, 2007, the trial court sentenced appellant to serve five years in prison, and pay a $7,500 fine. A timely notice of appeal was filed on May 16, 2007.
 {¶ 27} On appeal, appellant asserts that he received ineffective assistance of counsel at trial in four separate instances. Appellant first asserts that appointed defense counsel's performance was deficient because counsel failed to object when Brown testified as to statements that had not been reduced to a writing and given to the defense before trial, as required Crim.R. 16(B)(1)(a)(ii). Appellant's other alleged instances of ineffective assistance include counsel's failure to ask for a mistrial when the prosecutor *Page 9 
referred to a cut on appellant's hand during closing arguments; statements made by defense counsel on the record that were "unnecessary, unprofessional and reflected poorly upon appellant and his cause;" and prejudice resulting from defense counsel's decision to permit him to appear at trial in jail clothes. We will address each of appellant's arguments separately.
 {¶ 28} Initially, we note that, before a conviction may be reversed for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389,2000-Ohio-448, citing Strickland v. Washington (1984), 466 U.S. 668,687-688, 104 S.Ct. 1052, 2064, 80 L.Ed.2d 674, 694.
 {¶ 29} "In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation."State v. Kollar, 8th Dist. No. 89606, 2008-Ohio-806, ¶ 11, citingStrickland, supra; State v. Brooks (1986), 25 Ohio St.3d 144.
 {¶ 30} As to appellant's first claim, Crim.R. 16(B)(1)(a)(ii) states, in relevant part, that: *Page 10 
 {¶ 31} "(a) Statement of defendant or co-defendant. Upon motion of the defendant, the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph any of the following which are available to, or within the possession, custody, or control of the state, the existence of which is known or by the exercise of due diligence may become known to the prosecuting attorney:
 {¶ 32} "* * *
 {¶ 33} "(ii) Written summaries of any oral statement, or copies thereof, made by the defendant or co-defendant to a prosecuting attorney or any law enforcement officer; * * *."
 {¶ 34} At trial, Brown testified that he did not make a report of appellant's statements because he was not the arresting officer. Accordingly, no written account was available to the prosecutor. Nevertheless, it is well-settled that the state cannot avoid its duty pursuant to Crim.R. 16(B)(1)(a)(ii) by simply "failing to make a record of the statement." State v. Lopez, 6th Dist. No. L-06-1243,2007-Ohio-5473, ¶ 17, citing State v. DeLeon (1991), 76 Ohio App.3d 68,77, citing State v. Parson (1983), 6 Ohio St.3d 442, 445.
 {¶ 35} Appellant's appointed defense counsel did not object to Brown's testimony at trial, or otherwise apprise the trial court of the prosecution's error. Accordingly, we must determine whether counsel's inaction constitutes ineffective assistance.
 {¶ 36} In evaluating a claim for ineffective assistance of trial counsel, courts must remember that "[n]o particular set of detailed rules for counsel's conduct can *Page 11 
satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." Strickland, supra, at 688-689. In fact, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." Id.;State v. Smith (1985), 17 Ohio St.3d 98; Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301. The failure to object to errors during trial "does not constitute ineffective assistance of counsel per se, as that failure may be justified as a tactical decision." State v. Gum (1995),73 Ohio St.3d 413, 428; State v. Clayton (1980), 62 Ohio St.2d 45, 49; State v.Fayne, Cuyahoga App. No. 83267, 2004-Ohio-4625. Ultimately, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, supra, at 691.
 {¶ 37} As set forth above, in addition to Brown's testimony, the record contains testimony by Miller, who saw a black male throw a baggie containing drugs out of the kitchen window; Bragg, who stated both in court and in his written supplemental report that appellant admitted to owning all the drugs in the apartment; and Gerken, who testified that he overheard appellant telling Bragg that the drugs belonged to him. It is undisputed that, except for police officers, appellant and Matthews were the only ones in the apartment. *Page 12 
 {¶ 38} On consideration of the foregoing, we find that the record contains ample evidence to support the jury's determination of appellant's guilt, even without Detective Brown's testimony.
 {¶ 39} We further note that, even if appellant had called the error to the trial court's attention, the remedy employed for a violation of Crim.R. 16(B)(1)(a)(ii), including the decision to grant or deny a mistrial, "is within the sound discretion of the court and will not be reversed absent an abuse of that discretion. Crim.R. 16(E)(3)[2] * * *." State v. Lopez, supra, ¶ 17. (Other citations omitted.) The relevant inquiry in such a case is whether the record demonstrates "`(1) that the prosecution's failure to disclose was a willful violation of Crim.R. 16, (2) that foreknowledge of the statement would have benefited the accused in the preparation of his defense, or (3) that the accused was prejudiced by admission of the statement * * *.'" Id., ¶ 20, quotingState v. Parson, supra, syllabus.
 {¶ 40} In this case, although it is undisputed that the prosecution failed to disclose appellant's statements to Brown, appellant has failed to demonstrate how prior knowledge of his own statement would have benefited his defense. See State v. Childs (June 19, 1998), 1st Dist. No. C-961134, citing Parson, supra. In addition, for the foregoing reasons, appellant was not unduly prejudiced by the admission of Brown's testimony. *Page 13 
Accordingly, appellant has not demonstrated that, even if the trial court had excluded Brown's testimony, the outcome of his trial would have been different, or that defense counsel's failure to object to Brown's testimony was anything other than trial strategy. Thus, appellant's claim that he received ineffective assistance of trial court on this basis is without merit.
 {¶ 41} In support of his second claim, appellant asserts that defense counsel should have asked for a mistrial in response to the prosecutor's remarks about a cut on appellant's hand. However, such a motion would not have been successful, for the following reasons.
 {¶ 42} Generally, the granting of a mistrial is within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,182. Ultimately, a defendant is only entitled to a mistrial "when the ends of justice so require and when a fair trial is no longer possible."State v Williams, 1st Dist. Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 50, citing State v. Brewster, 1st Dist. Nos. C-030024 and C-030025,2004-Ohio-2993. (Other citation omitted.)
 {¶ 43} The record shows that defense counsel immediately objected when the prosecutor referred to a cut on appellant's hand during closing arguments. It was only after holding a sidebar conference that the trial court determined the cut was mentioned at the suppression hearing, but not at the trial. The objection was sustained, and the jury was told to disregard the prosecutor's statement about the cut. Thereafter, in his own closing, defense counsel stated: *Page 14 
 {¶ 44} "Now, the prosecutor stated in his opening portion of his closing statement by saying that the defendant cut his hand. Well, that would sure seem to be the case, right? I mean you put your hand, your * * * fist with a packet of dope in it through a window. Now, I don't know if it was a double-pane window * * * or whether it's a single-pane window, but it went through. And it created a nice round circle. Boom.
 {¶ 45} "Did you hear any evidence whatsoever about any cut, cuts, that the defendant sustained on his hand? Nothing. Absolutely nothing.
 {¶ 46} "Does that make sense? No. Is that significant? Yes. * * *"
 {¶ 47} On consideration of the foregoing, we determine that the trial court correctly sustained defense counsel's objection and immediately gave curative instructions to the jury. Accordingly, appellant was not unfairly prejudiced by the prosecutor's erroneous remark. In addition, defense counsel employed a sound, albeit unsuccessful, trial strategy by pointing out to the jury that the record contained no evidence that appellant had a cut on his hand. Under such circumstances, appellant's argument that the failure to ask for a mistrial constitutes ineffective assistance of counsel has no merit.
 {¶ 48} Appellant's third claim is that defense counsel was ineffective because he made "unnecessary and unprofessional comments" during the trial. However, the comments made by defense counsel, as set forth above, were made out of the hearing of the jury. Further, they were made in response to the prosecutor's request for the removal of appellant's Bible from the sight of the jury. That request was overruled, in spite of *Page 15 
defense counsel's remarks, and appellant was allowed to display his Bible during the remainder of the trial. Under these circumstances, we fail to see how appellant was prejudiced by defense counsel's remarks, however unprofessional they may have been. Accordingly, appellant's claim of ineffective assistance based on counsel's remarks is also without merit.
 {¶ 49} Finally, appellant claims defense counsel was ineffective because he allowed appellant to appear at his jury trial wearing jail clothes. We disagree, for the following reasons.
 {¶ 50} This court has recognized that a defendant may be prejudiced by appearing at trial in jail clothes. State v. Collins, 6th Dist. No. L-05-1399, 2007-Ohio-3578, ¶ 27, citing Estelle Williams (1976),425 U.S. 501, 507, 96 S.Ct. 1691, 48 L.Ed.2d 126. We have also recognized that the defendant may elect, "as a matter of trial strategy, to stand trial in such attire." Collins, supra, citing Estelle, supra, at 504-505. In addition, there is no "per se rule that would invalidate any conviction where the accused wore prison garb at trial." Id. The relevant inquiry, therefore, "becomes not merely whether the defendant appeared before the jury in prison attire, but, rather, whether the accused's appearance before the jury in jail clothes was compelled." Id.; State v. Grissom (Oct. 27, 2000), 6th Dist. No. E-99-029.
 {¶ 51} The record shows that, before a jury was chosen, defense counsel asked for a brief recess so appellant could "dress out for trial" in some clothes that had been *Page 16 
delivered to the courthouse. The request was granted. Nevertheless, when court resumed, the trial court introduced appellant to the potential jurors, and further stated:
 {¶ 52} "Now, as you can see, the defendant is in custody. He's wearing jail clothes and there's [sic] deputies seated behind him.
 {¶ 53} "You should draw no inference from the fact that the defendant is in custody. He still is presumed to be innocent. Everyone who is charged with an offense in the State of Ohio except for capital murder case[s] is entitled to be released on bond. The reason this defendant is sitting here in the courtroom is because he has been unable to post bond. You should draw no inference from the fact that he is in jail clothes. He is presumed innocent unless and until the evidence establishes his guilt beyond a reasonable doubt."
 {¶ 54} On consideration of the foregoing, we find no evidence in the record that appellant was compelled to wear jail clothes during the trial. In fact, it is possible defense counsel decided not to have appellant dress in civilian clothes as a matter of trial strategy. In any event, the jury was not unduly prejudiced by appellant's attire, as evidenced by the fact that appellant was convicted on only one of the three charges stated in the indictment. Accordingly, appellant's claim that the failure to ensure that he wore civilian clothes constitutes ineffective assistance of trial counsel is meritless.
 {¶ 55} Appellant's sole assignment of error is not well-taken. The judgment of the Lucas County Court of Common Pleas is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred *Page 17 
in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., Thomas J. Osowik, J., CONCUR.
[1] Count 2 was later amended to charge appellant with violating R.C.2925.03(A)(2) and (C)(4)(e), which is a second degree felony.
[2] Pursuant to Crim.R. 16(E)(3), once a party's failure to comply with Crim.R. 16(B)(1)(a)(ii) is brought to the trial court's attention, the court "may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances." *Page 1