[Cite as *State v. Letner*, 2023-Ohio-610.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                        :

    Plaintiff-Appellee,        :

                     No. 111552

    v.                               :

MATTHEW W. LETNER,                    :

    Defendant-Appellant.       :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 2, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-664489-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Michael Lisk, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Erika B. Cunliffe, Assistant Public Defender, *for appellant*.

ANITA LASTER MAYS, A.J.:

{¶ 1} Defendant-appellant Matthew W. Letner ("Letner") appeals his jury trial conviction for promoting prostitution in violation of R.C. 2907.22(A)(2). We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 2} On October 28, 2021, Letner was indicted on the following counts: (1) rape, first-degree felony, R.C. 2907.02(A)(2); (2) kidnapping, a first-degree felony, with a sexual motivation specification, R.C. 2905.01(A)(4) and 2941.147(A) respectively; (3) domestic violence, first-degree misdemeanor, R.C. 2919.25(A); (4) gross sexual imposition, fourth-degree felony, R.C. 2907.05(A)(1); (5) domestic violence, first-degree misdemeanor, R.C. 2919.25(A); (6) compelling prostitution, a third-degree felony, R.C. 2907.21(A)(1); and (7) promoting prostitution, fourth-degree felony, R.C. 2907.022(A)(2).

{¶ 3} The charges arose from events that transpired between Letner and his former girlfriend, Jane Doe. Letner pleaded not guilty, and the case proceeded to a jury trial on April 26, 2022. Prior to jury voir dire, Letner objected to the trial court's decision to allow Letner to proceed with trial wearing his jail uniform but without restraints.

{¶ 4} The state called four witnesses. Doe testified that she and Letner had been acquaintances for five or six years and began to date about January 2021. At the time, Doe was allegedly in an abusive relationship with her former boyfriend, Victor Novak ("Novak"), who died in October 2020. Doe was involved with prostitution and drugs when she met Letner who was aware of her activities. Letner was employed and encouraged Doe to improve her lifestyle. Doe moved in with Letner and the two stayed at Airbnbs and hotels while Doe continued her

prostitution activities with Letner's knowledge so they could build financial stability. Doe also continued to use drugs.

{¶ 5} Letner told her that she should increase her prices and assisted her with pricing and logistics. About one month after their initial agreement to work toward economic stability, Letner stopped working and Doe became the sole income source. Letner focused on managing Doe's activities such as running ads, text messaging and setting prostitution appointments. In support of the rape count, Doe described an encounter that involved Letner allegedly sexually assaulting her. Doe locked herself in the bathroom until police arrived in the morning.

{¶ 6} Kevin North ("North") testified about his friendship of several years with Doe and more recent acquaintance with Letner. North met Letner in August 2021 at Doe's invitation. North arrived at the hotel where Doe and Letner resided at the time to find Letner focused on a cell phone placing ads and texting to make appointments for Doe's prostitution activities. North confirmed that Doe called North when Doe was hiding from Letner in the bathroom. North called a police friend who said an officer would perform a wellness check.

{¶ 7} Cleveland Police Department ("CPD") officer Ricardo Holt-Santiago ("Officer Holt-Santiago") responded to the scene at 9:00 a.m. in response to a "check-well" call received at 8:45 a.m. Officer Holt-Santiago was wearing a body camera. Letner answered the door. Doe emerged about ten minutes later and appeared to be afraid. Officer Holt-Santiago narrated the recorded events for the

jury, discussed his interaction with Doe and said that two cell phones were removed from the scene.

{¶ 8} CPD detective Durst ("Det. Durst") with the sex crimes unit also worked for the regional human trafficking task force. Det. Durst met with Doe, took photographs, and telephonically interviewed North. Det. Durst testified that three cell phones were removed from the scene. He was aware that one phone belonged to Doe and assumed one of the others belonged to Letner. Det. Durst did not unload the contents of the two phones that potentially contained evidence of the prostitution activities including payments.

{¶ 9} The state dismissed the Count 5 domestic violence charge with prejudice and rested. Letner's original and renewed motions for judgment of acquittal under Crim.R. 29 were denied.

{¶ 10} Letner was acquitted of all counts except Count 7 for promoting prostitution under R.C. 2907.22(A)(2). Letner appeals.

## II. Assignments of error

{¶ 11} Letner assigns the following as error:

I.    By forcing Matthew Letner to proceed to jury trial wearing his jail clothes, notwithstanding his objection to doing so, the trial court violated Letner's state and federal constitutional rights to due process, a fair trial, and the presumption of innocence.

II.   Matthew Letner's conviction for promoting prostitution violates his right to due process as protected by the Fourteenth Amendment to the US Constitution and Article I, Section 10 of the Ohio Constitution.

### III. Law and analysis

### A. Prison attire

{¶ 12} Prior to jury voir dire, Letner posed an objection to the prison attire. "[A] defendant cannot be compelled to go to trial in jail clothes, your Honor, it is prejudicial, and there is no way to get around it." (Tr. 27.) Letner accurately cites the United States Supreme Court's decision in *Estelle v. Williams*, 425 U.S. 501, 504, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), for the premise that the due process rights of a defendant may be violated where the defendant "stands trial before a jury while dressed in identifiable jail clothes." *State v. R.W.*, 8th Dist. Cuyahoga No. 110858, 2022-Ohio-2771, ¶ 24, citing *id.*

{¶ 13} The *Estelle* Court recognized that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." *Id.*, citing *id.* at 504; *see also Holbrook v. Flynn*, 475 U.S. 560, 568, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Acknowledging that a defendant may "choose to wear identifiable jail clothing 'in the hope of eliciting sympathy from the jury,'" the court "declined to establish a bright-line rule requiring a conviction to be reversed where the defendant appeared before the jury in jail clothing." *Id.*, quoting *Estelle* at 507-508.

{¶ 14} First, a defendant must show that he was compelled to stand trial before a jury dressed in identifiable jail attire to establish that a constitutional violation occurred. *R.W.* at ¶ 25, citing *State v. Trowbridge*, 1st Dist. Hamilton

No. C-110541, 2013-Ohio-1749, ¶ 28. Secondly, a defendant must show that he was prejudiced by the compulsion. *Id.*

{¶ 15} The trial court explained in this case:

Court:    I'm not compelling him to go to trial and neither is the executive branch of government. He was notified of today's trial date. For better or worse, I guess, Mr. Letner has been unable to make bond, so he couldn't appear in street clothes off the street, so to speak. But it also appears, I guess, that Mr. Letner doesn't have a relation or a friend on the outside who could have brought him down a suit of clothing, but I kept very little control over that. I know that the opportunity was there, and the opportunity was not taken advantage of. There is no, I believe, compulsion.

Do you have some sort of — other than object — do you have a proposed remedy?

Counsel:  I would like to have an opportunity to get him some clothes, Your Honor.

Court:    And give me one moment because I want to glance at the docket here.

So in looking at the docket, Mr. Letner was arrested on October 18 of last year * * * [and has] been in custody since [that time]. And now the next thing I want to check is when today's date was set. * * *

[I]t was set on March 9th, but that's a month and a half ago.

So, October until today is essentially half a year, early March until today, essentially six weeks. I mean the opportunity was there, but it wasn't taken advantage of.

Counsel:  Your Honor, I think that's an inference that the Court is not entitled to make, if I could be respectful. His mother called him and said that [she] got clothes for [him].

I believe they were delivered. He was certainly not arrested in a Cuyahoga County orange outfit when he was arrested. They can't find his clothes.

(Tr. 28-29.)

{¶ 16}  The exchange continued:

Court:      Well, that's — let's assume that some error was made.  I
            mean I don't think there is any evidence that anything was
            done intentionally, but that the sheriff made some error.
            That is still not compulsion by the executive branch.

            You are saying that the mother came down with clothing, but
            it was refused?

Counsel:  I don't know what happened.  I've not personally spoken to
            her, so I'm not going to represent something out of court.  I
            don't know what happened.  I just know that my client spoke
            to his mom and she said that "I got clothes for you."

(Tr. 30.)

{¶ 17}  The state agreed with the trial court's position.  Counsel requested a

one or two-day continuance.

Counsel:  Your Honor, I would ask that we get a one or two day
            continuance.  Certainly, we can maybe do it Wednesday
            morning.  Give me a chance — I mean I've got other trials
            scheduled — but give me a chance to buy him some clothes.
            That's what I have to do.  It's an assigned case, Your Honor.
            I'll just find — I don't usually shop there but I'll have to go to
            Walmart, or some place and find him an outfit.

Court:      Here's what we'll do.  To the extent there is an objection, the
            things that you have said and pointed out are of the record.
            I have every confidence that I could get Mr. Letner a fair trial.

            And I certainly will instruct the jury to disregard the fact that
            he is in jail awaiting trial.  I don't know the exact reason, I
            assume that he can't make bond.  I'll just say something
            anodyne [sic] to the fact that he is awaiting trial in jail, but
            the presumption of his innocence still applies.

            So, to that extent the motion is overruled, and we'll bring
            [the jury] out.

(Tr. 39-40.)

{¶ 18} We do not find that Letner was compelled to wear prison attire. As the trial court emphasized, Letner had six months to secure civilian clothing. This court and others have found that where a defendant had ample opportunity to secure civilian clothing for trial but did not, the defendant cannot show he or she was "compelled" to stand trial in jail clothing. *State v. Hawthorne*, 8th Dist. Cuyahoga No. 102689, 2016-Ohio-203 (defendant had over two months to secure regular clothing); *State v. Flowers*, 8th Dist. Cuyahoga No. 91864, 2009-Ohio-4876 (one month before trial, defendant's parents were instructed to bring clothing but failed to do so); *State v. Dorsey*, 8th Dist. Cuyahoga No. 72177, 1998 Ohio App. LEXIS 1727 (Apr. 23, 1998) (defendant had ample time before the trial date to secure civilian clothes but did not do so).

{¶ 19} In addition, this court does not find that Letner was prejudiced thereby. In *R.W.*, 8th Dist. Cuyahoga No. 110858, 2022-Ohio-2771, we noted that the jury found appellant not guilty of two counts of rape that indicated the jury was "clearly able to deliberate objectively and fairly." *Id*. at ¶ 33, citing *Hawthorne*.

{¶ 20} In *Hawthorne,* this court held that the defendant's conviction of a lesser included offense indicated that the jury "carefully reviewed the evidence against him" that did not suggest prejudice. *Id*. at ¶ 30. In *State v. Grissom*, 6th Dist. Erie No. E-99-029, 2000 Ohio App. LEXIS 4977 (Oct. 27, 2000), the court determined that a jury's failure to convict the defendant of all charges demonstrated that the jury "carefully considered the evidence relating to the charges rather than

making a blanket decision that appellant was guilty" because he was wearing prison attire at trial. *Id*. at *6. *See also State v. Jackson*, 6th Dist. Lucas No. L-07-1184, 2008-Ohio-1563, ¶ 54 ("[T]he jury was not unduly prejudiced by appellant's attire as evidenced by the fact that appellant was convicted on only one of three charges.").

{¶ 21} Courts have also held that a curative instruction is a further indication that no prejudice existed. In *R.W.* at ¶ 31, we concluded that the appellant did not demonstrate prejudice as the trial court instructed the jury "to disregard the fact that appellant was shackled and wearing jail clothing, and we must presume that the jurors followed the instruction." *Id*., citing *State v. Dalmida*, 1st Dist. Hamilton No. C-140517, 2015-Ohio-4995, ¶ 21, citing *State v. Fears*, 86 Ohio St.3d 329, 334, 715 N.E.2d 136 (1999) (jury is presumed to follow court's instruction to disregard defendant's appearance in jail clothing).

{¶ 22} In *Dorsey*, 8th Dist. Cuyahoga No. 72177, 1998 Ohio App. LEXIS 1727 (Apr. 23, 1998), the trial court gave a cautionary instruction regarding defendant's "orange" attire. *Id*. at *9. "[Y]ou can draw no inference due to the fact that he's dressed in orange or, in other words, not in what we would perceive to be street clothes." *Id*. "A jury is presumed to have followed a proper cautionary instruction given by the trial court." *Id*. at * 10, citing *State v. Loza,* 71 Ohio St. 3d 61, 79, 641 N.E.2d 1082 (1994). "We concluded that the trial court's cautionary instruction cured any potential prejudice in the case." *Id*.

{¶ 23} In *State v. Smith*, 2d Dist. Montgomery No. 21058, 2006-Ohio-2365, the court stated that though the voir dire was not included in the trial transcript, the

trial court indicated it would instruct the jury not to draw inferences from the prison clothing or hold it against him. *Id.* at ¶ 28. "We presume that this cautionary instruction was 'given' and 'followed' by the jury." *Id.*, citing *State v. Stallings*, 89 Ohio St.3d 280, 286, 731 N.E.2d 159 (2000), *Dorsey* at * 10. *See also State v. Trowbridge,* 1st Dist. Hamilton No. C-110541, 2013-Ohio-1749, ¶ 37 (judge instructed jurors not to infer guilt because defendant was wearing jailhouse clothing).

{¶ 24} In this case, the trial court instructed prior to voir dire:

> The presumption of innocence is not a mere formality. Every juror is bound to entertain it sincerely, conscientiously, and ungrudgingly, and to give the defendant the full benefit of it.
>
> Additionally, you may have observed or figured out that Mr. Letner is awaiting trial in jail, given the fact that he is wearing a distinctive orange jail uniform.
>
> Sometimes a defendant is able to make a bond. Other times the defendant is not able to make a bond. And it appears in this case, Mr. Letner was unable to make bond. But the fact that he is awaiting trial in jail has no bearing on the presumption of innocence. He is presumed innocent the way any person walking in and out of the doors of the court in a normal suit of clothes would be presumed innocent by you.
>
> So the fact that he is garbed in jail attire is of no consideration and no importance and no relevance here. And please do not let it influence you, certainly consciously, but also subconsciously as well.

(Tr. 40-41.) The trial court also entered a journal entry recording the prison attire condition. "Letner is awaiting trial in jail and did not arrange for an outfit of regular clothing to wear in court. He will therefore stand trial in his jail uniform and is

permitted to appear in [the courtroom] without restraints during the trial." Journal entry No. 123023372, p. 1 (Apr. 26, 2022).

{¶ 25} The record supports that Letner was not compelled to wear prison attire. Letner had ample opportunity to obtain civilian clothing. The record also reveals that Letner was not prejudiced. The trial court issued a comprehensive curative instruction, and Letner was convicted of only one of the six counts that indicated the jury was focused on the evidence, not the attire.

{¶ 26} Based on the foregoing, we find no error and the first assignment of error is overruled.

## B. Manifest weight

{¶ 27} Letner's constitutional challenge to his conviction charges that his conviction for promoting prostitution "is contrary to the weight of the evidence presented. A conviction that is against the weight of the evidence violates due process and requires reversal and remand for a new trial. *Tibbs v. Florida*, 457 U.S. 31, 102 S. Ct. 2211, 72 L. Ed. 2d 652 (1982)." Appellant's brief, p. 11.

{¶ 28} When reviewing a manifest-weight challenge, an appellate court, "'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Virostek*, 8th Dist. Cuyahoga No. 110592, 2022-Ohio-1397, ¶ 54, quoting *State v. Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717 (1st Dist.1983). "'A reversal on the basis that a verdict

is against the manifest weight of the evidence is granted only in the exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Martin* at 175.

{¶ 29} This court has previously stated:

> The criminal manifest-weight-of-the-evidence standard addresses the evidence's effect of inducing belief. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541 (1997). Under the manifest-weight-of-the-evidence standard, a reviewing court must ask the following question: whose evidence is more persuasive — the state's or the defendant's? *Wilson* at *id.* Although there may be legally sufficient evidence to support a judgment, it may nevertheless be against the manifest weight of the evidence. *Thompkins* at 387; *State v. Johnson*, 88 Ohio St.3d 95, 2000-Ohio-276, 723 N.E.2d 1054 (2000).
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Wilson* at *id.*, quoting *Thompkins* at *id.*

*State v. Williams*, 8th Dist. Cuyahoga No. 108275, 2020-Ohio-269, ¶ 86-87.

{¶ 30} Letner was convicted of R.C. 2907.22(A)(2), promoting prostitution. The indictment provided that Letner "did knowingly, did supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire." Pursuant to the statute, "(A) No person shall knowingly: * * * Supervise, manage, or control the activities of a prostitute in engaging in sexual activity for hire." *Id.*

{¶ 31} Letner argues that the state's entire case rested on Doe's testimony. However, testimony was also provided by North. North testified he had known Doe for approximately five years and Letner for about a year. Prior to Letner, Doe's

boyfriend Novak "rented" Doe's company to others to support Novak's drug habit and encouraged Doe's use of drugs.

{¶ 32} Pertinent to the challenged conviction, North testified he visited Doe and Letner at their hotel room rental in August 2021:

State:     [D]o you have any personal knowledge whether she was engaging in prostitution?

Witness:  Well, yeah, it was fairly obvious.

State:     Why do you say that?

Witness:  Because [Letner] would sit there and play like he was Doe on the phone setting up dates and played some guy called Rich Ass Play. * * * [S]he was out of it most of the time. And, yeah, he kind of thrilled on sitting there and setting up the dates and stuff.

* * *

State:     Do you have any personal knowledge of any advertisements with Doe at this time?

Witness:  There was some on Skip The Games, I do believe, and another site, Tryst or something like that.

(Tr. 202-203.) North personally observed two of the advertisements that included pictures of Doe.

{¶ 33} As Letner indicates, Doe provided the core testimony underlying the promoting prostitution charge. Doe testified that Letner led her to believe that they were both working to better themselves financially and that she thought he cared for her and wanted to build a future. Letner suggested that she increase her prices and ultimately left his employment and took over the pricing, advertising, and arrangements for Doe's encounters.

{¶ 34} Doe explained:

[Letner] would write the ads for me and post them online, and then he would respond to any calls or texts that would come through in response to said advertisement seeking my services and prostitution. He would respond to those calls and text messages, mostly just texts, you know. If there was a call, typically, we would let it go to voicemail and a text message conversation would ensue, since it is him responding and not me in my voice.

And then he would just communicate with me or I would be able to be next to him and see in real time messages coming back and forth. He would let me know or I would be seeing for my own eyes being next to him what time and how long and how much money and what not that was going to be taking place when there was things like that going to happen.

(Tr. 264-265.)

{¶ 35} Doe stated that Letner was also in charge of the finances.

I would give [the money] to him after the visit would end. I would typically just be told to leave it on a dresser or the table or his desk or the couch, just out, basically. And then he would make sure that I got everything that he had arranged for me to get, and essentially he would typically hold onto it.

(Tr. 265.) Doe did not keep the money because Letner made her feel guilty that he had to deal with a girlfriend that engaged in prostitution.

{¶ 36} "R.C. 2907.22 does not define 'supervise, manage, or control.' *Black's Law Dictionary* defines 'supervise' in part as follows: '[t]o have general oversight over.' *Id.*, 1290 (5th Ed.1979)." *State v. Satterfield*, 2017-Ohio-5616, 94 N.E.3d 171, ¶ 20 (2d Dist.). "'Manage' is defined in pertinent part as follows: '[t]o control and direct, to administer, to take charge of.' *Id.* at 865." *Id.* "Lastly, *Black's Law Dictionary* defines 'control' as the 'power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee.' *Id.* at 298." *Id.*

**{¶ 37}** North and Doe testified that Letner controlled Doe's activities. This is not the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541.

**{¶ 38}** Accordingly, Letner's conviction is not against the manifest weight of the evidence and his second assignment of error is overruled.

## IV. Conclusion

**{¶ 39}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, ADMINISTRATIVE JUDGE

EILEEN A. GALLAGHER, J., and
MARY J. BOYLE, J., CONCUR